502 A.2d 142

In re Nomination Petition of Justin JOHNSON.

Appeal of the REPUBLICAN STATE COMMITTEE, Robert B. Asher and David M. Sanko.

In re Nomination Petition of Justin JOHNSON.

Appeal of Honorable Justin M. JOHNSON.

Supreme Court of Pennsylvania.

Argued April 18, 1985.

Decided Dec. 11, 1985.

C. Kent Price, Harrisburg, Thomas B. Kenworthy, Philadelphia, for the Republican State Committee et al.

Mark D. Schwartz, Pittsburgh, for Justin Johnson.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

On April 22, 1985, this Court, 507 Pa. 555, 492 A.2d 1118, entered an order in the above captioned appeal docketed at No. 21 W.D. On May 2, 1985, a second order was entered in the appeal docketed at No. 27 W.D. Both of these orders indicated that this opinion would follow.

These matters relate to a challenge to the nomination petition of the Honorable Justin M. Johnson, (hereinafter referred to as "Candidate") who was seeking the inclusion of his name on the ballot for the May 1985 Republican Party primary as a candidate for the office of Judge of the Superior Court. The April 22 order reversed the Commonwealth Court order sustaining one of the preliminary objections to the petition to set aside the Candidate's nomination petition. We directed that the matter be remanded to the Commonwealth Court for consideration and resolution of the remaining issues. Thereafter, the Commonwealth Court reached the merits of the objection and sustained the challenge to the nomination petition. The order of May 2 again reversed the Commonwealth Court, reinstated the

nomination petition and directed the Secretary of the Commonwealth to certify the Candidate's name for inclusion on the May 1985 Republican primary ballot.[1]

## I.

On March 12, 1985, the Candidate filed a nomination petition pursuant to section 953 of the Election Code, Act of June 3, 1937, P.L. 1333, Article IX, § 953, *as amended,* 25 P.S. 2913 (Supp.1985). The objectors, the Republican State Committee and two members of the Republican Party, Robert B. Asher and David M. Stanko (hereinafter collectively "Objectors"), filed a petition to set aside the Candidate's nomination petition pursuant to section 977 of the Election Code, 25 P.S. § 2937 (Supp.1985), on March 19, 1985, the last date on which that provision permitted the filing of such an objection.[2] A verification of the allegations contained in the Objectors' petition was filed on March 20, 1985.

On March 22, 1985, the Candidate filed preliminary objections to the Objectors' petition maintaining, *inter alia,* that the verification was untimely. The Commonwealth Court sustained that preliminary objection.

After our remand order of April 22, the Commonwealth Court thereafter considered and dismissed the Candidate's remaining preliminary objections and reached the merits of the Objectors' petition. After a hearing, that court found that eleven (11) of the one hundred ten (110) individuals who signed Candidate's Blair County nomination petition were not registered and enrolled members of the Republican Party and concluded that their names must be stricken. As

---

1. These matters came to this Court as direct appeals pursuant to Rule of Appellate Procedure 1101(a)(1), relating to any matter which was originally commenced in the Commonwealth Court.

2. Section 977 provides in pertinent part: "All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court specifically setting forth the objections thereto, and praying that the said petition or paper be set aside." 25 P.S. § 2937 (Supp.1985).

a result, the Candidate's petition fell short of the Election Code's requirement that a candidate for the office of Judge of the Superior Court must procure at least one hundred (100) signatures of qualified electors in each of five (5) counties to qualify for a place on a party primary ballot. 25 P.S. § 2872.1(9) (Supp.1985).

The Candidate immediately appealed to this Court on April 30, 1985. Since the primary was imminent (May 21, 1985), further oral argument of the matter was impracticable. After considering the parties' briefs on the merits of the Objectors' challenge, we rendered our final order in this matter on May 2, 1985.

## II.

We will first address Objectors' contention that the Commonwealth Court erred in sustaining the Candidate's preliminary objection premised on the failure of the Objectors to verify their petition within the time limit prescribed by the Code for the filing of an objection. The mechanism created by the legislature for challenging the validity of a nomination petition or paper was recently described by this Court in *In re Jones*, 505 Pa. 50, 476 A.2d 1287 (1984):

> The sole and exclusive remedy for challenging a person's right to run for political office in Pennsylvania is provided by Section 977 of the 1937 Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, Art. IX, § 977, as amended, 25 P.S. § 2937 (Supp.1983–84). *Brunwasser v. Fields*, 487 Pa. 283, 409 A.2d 352 (1979); *Harrington v. Carroll*, [428 Pa. 510, 239 A.2d 437 (1968)]; *Lurie v. Republican Alliance*, 412 Pa. 61, 192 A.2d 367 (1963); *Oteri Appeal*, 372 Pa. 557, 94 A.2d 772 (1953); *Thompson v. Morrison*, 352 Pa. 616, 44 A.2d 55 (1945); *Kane v. Morrison*, 352 Pa. 611, 44 A.2d 53 (1945).

> In the absence of a demonstration of a specific defect in the nomination petition under section 977, a candidate cannot be precluded from running for the office for which the nomination petition was filed. Section 977 sets forth the procedure to be followed in pursuing an objection,

including a time schedule in which the various steps of the process must occur. The section also expressly defines when the court may find the nomination petition or paper defective and delineates the court's power to grant amendment. *Petition of Ross,* 411 Pa. 45, 190 A.2d 719 (1963); *Ochman Appeal,* 364 Pa. 525, 73 A.2d 34 (1950). *Id.,* 550 Pa. at 65, 476 A.2d at 1294–95 (footnote omitted).

■ Section 977 requires that: (1) the petition to set aside must be filed within seven (7) days after the last day for filing the challenged nomination petition or paper; (2) the petition must specifically set forth the objections; (3) the petition must contain a prayer that the nomination petition or paper be set aside; and (4) the petition must be served upon the officer or board with whom the nomination petition or paper was filed. 25 P.S. § 2937 (Supp.1985). Section 977 prescribes no other requirements as to the form, content or filing of an objection, nor does any other section of the Election Code address that subject. Thus the legislature has not seen fit to expressly require that an objection filed pursuant to section 977 contain a verification.

The Commonwealth Court, in reaching its conclusion that the objection was defective, determined that Rule 1024(a) of the Pennsylvania Rules of Civil Procedure was applicable to this pleading. Rule 1024(a) provides in pertinent part:

Every pleading containing an averment of fact not appearing of record in the action or containing a denial of fact shall state that the averment or denial is true upon the signer's personal knowledge or information and belief and shall be verified.

Pa.R.C.P. 1024(a).

We disagree with the notion that this Rule or any other Rule of Civil Procedure is applicable to a challenge to a nomination petition or paper. The overriding consideration embodied in section 977 of the Election Code is the expeditious resolution of objections to a prospective candidate's filings. *See Petition of Jones,* 464 Pa. 152, 346 A.2d 260 (1975); *In re Objections to Nomination Papers of "Socialist Labor",* 332 Pa. 78, 1 A.2d 831 (1938). We do not believe

that engrafting technical rules of pleading and procedure onto the mechanism prescribed by the legislature serves that end, nor do we find the addition of such a requirement would materially enhance the integrity of the election process. The filing of this objection merely gives notice of the complaint being registered. The mere offering of objections does not disturb the candidacy of the person against whom the objection is directed. The candidacy can only be terminated when the petition or paper is shown to be defective. The requirement of a verification would be more a matter of form than substance. As noted previously by this Court:

> A petition challenging [a candidate's] qualification need not be drafted with the nicety required of a formal pleading in an action at law. If it is timely filed and alleges a *prima facie* case, the court should, in the public interest, undertake its consideration.
> *Beynon Appeal,* 370 Pa. 532, 537, 88 A.2d 789, 792 (1952) (footnote omitted).

To encumber the election process with "niceties in form" by incorporating the rules of civil procedure by judicial interpretation would frustrate the carefully designed time frame established under the Code for the expeditious disposition of these objections. The General Assembly has clearly demonstrated its ability to augment a legislatively proscribed procedure by the Rules of Civil Procedure when that is their intention. *See e.g.,* Mechanics' Lien Law of 1963, Act of August 24, 1963, P.L. 1175, No. 497, Art. VII, § 701, 49 P.S. § 1701(a) (The practice and procedure to obtain judgment upon a claim filed shall be governed by the Rules of Civil Procedure promulgated by the Supreme Court); *cf.* Administrative Law and Procedure, 2 Pa.C.S. § 702 (Stating that appeals from an adjudication of a Commonwealth agency shall be pursuant to judicial procedure under Title 42). Moreover, where an affidavit verifying the contents of a petition filed under the Election Code was deemed necessary, the legislature not only required it but additionally expressly set forth its context. *See e.g.,* The

Election Code, *supra,* 25 P.S. § 951–34 (to cancel or suspend the registration of any registered elector); 25 P.S. § 2869, § 2911 (nomination petitions); 25 P.S. § 2870 (candidacy); 25 P.S. § 3313, § 3457 (contest petitions). The General Assembly's failure to do so in this context is the clearest possible indication of a contrary intent. Therefore we concluded that an untimely verification was an improper ground for dismissal of the Objectors' petition since a verification was not required.

## III.

The basis of the Commonwealth Court's rejection of the nomination petition rested upon its finding that the petition did not contain the requisite number of valid names. Objectors challenged only eleven (11) of the one hundred and ten (110) names that appeared on the Republican Petition of electors from Blair County. The unchallenged names were not facially deficient and were accepted by the Secretary of the Commonwealth as being valid.[3] Thus, if one or more of the eleven signatures are found to be valid, the objection to the Blair County petition must fail.[4]

Any examination of a finding of invalidity of a nomination petition or paper must be prefaced with the observation that the Election Code must be liberally construed so as not to deprive a candidate of the right to run for office or the voters of their right to elect the candidate of their choice. *In re Jones, supra; Wieskerger Appeal,* 447 Pa. 418, 290 A.2d 108 (1972); *Perles v. Hoffman,* 419 Pa. 400,

---

**3.** All petitions received and filed within the time frame prescribed under the Act are deemed valid unless an objection is made, and the objection must be specifically set forth. *See* 25 P.S. § 2937.

**4.** The Election Code provides that a candidate for the office of Judge of the Superior Court must procure at least one hundred (100) registered and enrolled members of the proper party in each of at least five (5) counties of the State. 25 P.S. § 2872(b). The Candidate filed petitions with one hundred (100) or more names appearing thereon from five (5) counties; the petition under attack contained the names of Republican voters of Blair County. The Commonwealth Court's ruling that eleven (11) of the signatures appearing on the Blair County petition were invalid, reduced the number of valid signatures to ninety-nine, one less than the requisite number.

213 A.2d 781 (1965); *Petition of Ross,* 411 Pa. 45, 190 A.2d 719 (1963); *Miller Election Contest Case,* 351 Pa. 469, 41 A.2d 661 (1945); *Cole's Election,* 223 Pa. 271, 72 A. 510 (1909). Additionally, it is a fundamental principle of the law of evidence that the proponent of a proposition must bear the burden of its proof. *See generally, Barrett v. Otis Elevator,* 431 Pa. 446, 246 A.2d 668 (1968); *Daley v. Iselin,* 212 Pa. 279, 61 A. 919 (1905); *Carl v. Grand Union Company,* 105 Pa.Super 371, 616 A. 429 (1932); 9 Wigmore, Evidence § 2486 at p. 274 (1940). Not only do we in this Commonwealth observe this basic evidentiary tenet generally, our cases have inferentially recognized its application to section 977, 25 P.S. 2937. *See,. e.g., In Re Jones, supra,* 505 Pa. at 65, 476 A.2d at 1295 (In the absence of a demonstration of a specific defect in the nomination petition under section 977, a candidate cannot be precluded from running for the office for which the nomination petition was filed); *In re Glazier,* 474 Pa. 251, 253, 378 A.2d 314, 315 (1977) (Several objections dismissed because petitioners offered no supporting proof.)

Two of the signatures challenged were those of Pauline M. Balestino and Richard M. Balestino. It is agreed that these two individuals were registered and enrolled members of the Republican Party of Blair County in 1982. Mrs. Balestino signed the Candidate's petition on March 7, 1985, and Mr. Balestino signed the petition on March 9, 1985. The petition was filed with the Secretary of the Commonwealth on March 12, 1985. The basis for the finding of invalidity is the assertion that the names of these two individuals were purged from the voters' rolls.[5] However, the record does not reflect that the purging took place prior to the dates on which these signatures were affixed to

---

5. The Permanent Registration Act, provides, *inter alia,* for the cancellation or suspension of registration upon failure to vote during two calendar years. *See,* Act of April 29, 1937, P.L. 487 § 38, *as amended,* 1983, June 3, P.L. 14, No. 7, § 1 25 P.S. 951–38 (Supp.1985). A similar provision applicable to the City of Philadelphia can be found at 25 P.S. § 623–40 (Supp.1985).

Candidate's petition or before the date that this petition was filed with the Secretary of the Commonwealth.

Although there was testimony that the date by which the Balestinos were required to return the notice of the intent to purge to the Election Board was March 1, 1985, it is clear that the cancellation was not finalized by the County Registration Commission until March 15, 1985, three days after the petition had been filed.

Q. Do the registration materials or records that you have indicate a specific date that the purge was finalized?

A. Okay. March the 15th the cancellation report was computerized.

Q. That's when it went on the computer?

A. Right.

Notes of Testimony pp. 22, 23—Hearing March 29, 1985.[6]

■ Thus the record reflects that on March 7 and March 9 these two names appeared on the rolls of the County Registration Commission of Blair County as registered and enrolled members of the Republican Party. To accept the fact that the Balestinos were in the process of being purged when they signed Candidate's petition as the equivalent of having been removed would ignore the liberal construction we must give the Code. That all that remained to complete the process may be characterized as a ministerial act does not detract from the fact that the process of removing the Balestinos from the rolls had not been completed when the petitions were signed by them.

The position adopted herein does not, in any way, undermine the integrity of the process. The provision in the Code requiring that the signatures to a nomination petition be of registered and enrolled members of the political party in question is designed to prevent fraud and to preserve the probity of the process by which a party selects its candidates. The members of a political party have a right to select candidates who share their political philosophy and

6. This testimony was given by Ms. Jacqueline Yingling, Director of Voter Registration, Blair County.

who are in agreement with their priorities of government. This process should not be intruded upon by outsiders who may have other motives inimical to the interest of that party.[7]

The Balestinos had expressly indicated their preference for the Republican Party when they became registered or enrolled members of that party. Nor can it be said without further proof than that which is presented on this record, that their failure to timely respond to the purge notice reflected a change in their views. Under the Act the circulator is charged with the responsibility, *inter alia,* of securing signers who were at the time of their signing "qualified electors and duly registered and enrolled members of the designated party...." 25 P.S. § 2869 (Sup. 1985). There is nothing in this record to establish that the

7. Section 802 of the Election Code, 25 P.S. § 2832 provides as follows:
   No person who is not registered and enrolled as a member of a political party shall be entitled to vote at any primary of such party or to be elected or serve as a party officer, or a member or officer of any party committee, or delegate or alternate delegate to any party convention.
   This provision in the Election Code which prohibits voting for or nominating a candidate in any party primary unless registered and enrolled as a member of that party is popularly known as "Anti-Party Raiding Legislation." The Constitution, which is silent on the right to make nominations for offices, has afforded the Legislature the authority to regulate the manner in which candidates are to be chosen. Section 802 has been held to satisfy the constitutional requirements that "elections shall be free and equal ... and [not] interfere to prevent the free exercise of the right of suffrage." *Krull v. City and County of Philadelphia,* 382 Pa. 1, 114 A.2d 119 (1955); *In re Magazzu Election Case,* 355 Pa. 196, 49 A.2d 411 (1946); *Wilson v. Philadelphia County,* 319 Pa. 47, 79 A. 553 (1935). This Court in discussing the rationale of Section 802 stated:
   A primary election is a partisan election by its very nature.... Only the duly enrolled and registered members of that party can participate in the selection. Unlike other jurisdictions, this state does not permit crossover voting; rather it requires each party be permitted to select its own candidates for office without interference from rival parties. (cites omitted) Since this is a selection by the members of a political party, clearly they would be desirous of selecting a standard bearer who shared their political views and who could best articulate their needs and aspirations. (cites omitted)
   *In re Jones,* 505 Pa. 50, 69, 476 A.2d 1287, 1299 (1984).

circulator of this petition knew or should have known that the Balestinos did not meet this qualification on the respective dates that their signatures were affixed to this petition. To the contrary, the record reflects that if the Election Commission records had been checked on March 7 and March 9 each of these individuals would have been shown as duly registered and enrolled members of the Republican Party residing in Blair County, which in fact they were on the dates in question.

Accordingly, since the Objectors failed in their proof to establish the invalidity of the Candidate's nomination petition, the order of this Court dated May 2, 1985 reversed the Commonwealth Court, reinstated the nomination petition and directed the Secretary of the Commonwealth to certify the Candidate's name for inclusion on the May 1985 Republican primary ballot.

McDERMOTT, J., concurs in the result of this opinion.