713 A.2d 1106

**In the Matter of Nomination Petition of
Phil BERG, Democratic Candidate
for the Office of Governor.**

**Appeal of Louis B. KOZLOFF.**

**Appeal of Phil BERG.**

Supreme Court of Pennsylvania.

Submitted April 22, 1998.

Decided May 11, 1998.

Opinion Supporting Order May 15, 1998.

128

---

Samuel C. Stretton for Phil Berg.

John J. Connelly, Jr., Harrisburg, Mark B. Cohen, for Louis B. Kozloff.

Gwendolyn T. Mosley, Harrisburg, for Com., Dept. of State.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### *ORDER*

PER CURIAM.

AND NOW, this 11th day of May, 1998, the Order of the Commonwealth Court is affirmed. Opinion to follow.

### *OPINION*

ZAPPALA, Justice.

This opinion is filed in support of the per curiam order of this Court dated May 11, 1998. The order affirmed an order entered by Judge Doyle of the Commonwealth Court which granted a petition to set aside nomination petition.

On or about March 10, 1998, Phil Berg, Appellant, filed a Nomination Petition with the Secretary of the Commonwealth of Pennsylvania for the office of Governor in the Democratic primary. Berg obtained over 3,000 signatures from 36 different counties in the Commonwealth. Louis Kozloff, Appellee, subsequently filed a Petition to Set Aside the Nomination Petition wherein he contended that Berg did not have 100 valid signatures of Democrats from each of ten counties. Berg filed a Motion to Dismiss the challenge in which he alleged that section 912.1(3) of the Election Code,[1] was unconstitutional.

That section provides as follows:

Candidates for nomination of offices as listed below shall present a nominating petition containing at least as many valid signatures of registered and enrolled members of the proper party as listed below:

* * *

(3) Governor: Two thousand including at least one hundred from each of at least ten counties.

25 P.S. § 2872.1(3).

Berg argued that because of the unequal distribution of population in Pennsylvania's 67 counties, the requirement of 100 signatures from ten counties violated due process, equal protection and the one person/one vote principles pursuant to the First and Fourteenth Amendments of the United States Constitution. He contended that because less populous counties have fewer electors, the signatures of those electors are more "valuable" than those of more populous counties such as

---

1. Act of June 3, 1937, P.L. 1333, 25 P.S. § 2872.1(3).

Philadelphia or Allegheny. He further contended that the strict scrutiny standard of review should apply.

By Memorandum and Order dated April 7, 1998, Judge Doyle of the Commonwealth Court granted the Petition to Set Aside the Nomination Petition and struck Berg's name from the primary election ballot.[2] He declined to employ the strict scrutiny standard of review on the ground that no fundamental rights were affected by the ten county signature requirement. Judge Doyle held that the one person/one vote principles were not applicable in a case involving the nomination of a candidate for Governor because there is no question of unequal *representational* rights.

Applying the rational basis test, Judge Doyle concluded that the state has several legitimate interests in the statutory signature requirement. He found that the provision keeps the ballot free from chaos by requiring the candidate to have some statewide support and ensures that candidates do not merely obtain signatures from the most populous counties of the Commonwealth. Because the signature requirement was rationally related to the furtherance of the Commonwealth's interest concerning the ballot, Judge Doyle found that it passed constitutional muster. As Berg conceded that his petition did not contain valid signatures of 100 Democratic electors from each of ten counties, further analysis was unnecessary.[3]

▆▆▆ Likewise, our inquiry involves only the constitutionality of Section 912.1(3) of the Election Code, as it is undisputed that the statutory requirement was not satisfied. We must first identify the type of interest affected by the statutory classification so that we may determine the appropriate standard of review.

2. Prior to the Commonwealth Court's decision, Berg sought a preliminary injunction in the United States District Court for the Eastern District of Pennsylvania, to enjoin the enforcement of the statute. The court denied the request for a preliminary injunction. Berg's appeal to the United States Court of Appeals for the Third Circuit is currently pending.

3. Berg also filed in our Court an emergency motion to stay the printing of the ballot, which we denied on April 24, 1998.

Under a typical fourteenth amendment analysis of governmental classifications, there are three different types of classifications calling for three different standards of judicial review. The first type—classifications implicating neither suspect classes nor fundamental rights—will be sustained if it meets a "rational basis" test. In the second type of cases, where a suspect classification has been made or a fundamental right has been burdened, another standard of review is applied: that of strict scrutiny. Finally, the third type of cases, if "important" though not fundamental rights are affected by the classification, or if "sensitive" classifications have been made, the United States Supreme Court has employed what may be called an intermediate standard of review, or a heightened standard of review.

*James v. Southeastern Pennsylvania Transportation Authority*, 505 Pa. 137, 145, 477 A.2d 1302, 1305–1306 (1994).

 We also recognize that when assessing the merits of a constitutional challenge to a provision of a state's election code, a court

must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights.

*Council of Alternative Political Parties v. Hooks*, 121 F.3d 876 (3rd Cir.1997).

Berg contends that the strict scrutiny standard of review should apply to ballot issues in the electoral process because the fundamental right to vote is affected. He primarily relies on the United States Supreme Court's decision in *Moore v. Ogilvie*, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969). In *Moore*, independent candidates for the office of President of

the United States challenged an Illinois law that required candidates to obtain 25,000 signatures, at least 200 from each of 50 of the state's 102 counties, before their names were placed on the general election ballot. The population disparity in Illinois was such that 93.4% of the population resided in the 49 most populous counties, with 6.6% of the population residing in the remaining 53 counties. Under the challenged statute, the 6.6% minority could effectively block a candidate from appearing on the ballot against the desires of the majority even though it could not have defeated the candidate in the general election. Accordingly, the Court ruled that the new law unconstitutionally diluted the vote of the more populous counties in the state and therefore lacked the equality to which the exercise of political rights is entitled under the Fourteenth Amendment.

*Moore* is distinguishable, however, in two respects. First, the ten most populous counties in Pennsylvania comprise only 59% of the Democratic electors in the Commonwealth, with the remaining 41% distributed among the other 57 counties in the state. Thus, unlike *Moore*, the instant case does not present a situation where a scant minority of voters in rural areas could "veto" the wishes of the majority. Second, both the number and percentage of counties from which signatures were required was far greater in *Moore* than that imposed by section 912.1(3). In *Moore*, the statute required 200 signatures from each of 50 of the state's 102 counties, or 49% of the counties in the state. Here, a candidate is only required to obtain 2,000 signatures, at least 100 from each of 10 of the state's 67 counties, or 14.9% of the counties in the state.

This case is more analogous to *Cavanaugh v. Schaeffer*, 65 Pa.Cmwlth. 620, 444 A.2d 1308 (1982), where the constitutionality of Section 912(b) of the Election Code [4] was challenged. That provision requires candidates for the office of Justice of the Supreme Court of Pennsylvania to obtain 100 valid signatures from each of 5 counties. The challenge was based on the ground that the geographic distribution requirement set

4. Act of June 3, 1937, P.L. 1333, as amended, 25 P.S. § 2872(b).

forth in the Election Code violated the equal protection clause of the Fourteenth Amendment.

The Commonwealth Court upheld the constitutionality of the statute. It distinguished *Moore v. Ogilvie*, finding that the population disparity in Pennsylvania did not create a situation where a minority of the population possessed a veto power over that of the majority. The court relied upon the proposition that a "discriminatory law must have a real and appreciable impact on voters' rights before the strict scrutiny test of reasonable necessity would be applied in the challenge." *Cavanaugh*, 444 A.2d at 1311, citing *Bullock v. Carter*, 405 U.S. 134, 144, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972). It concluded that the signature requirement had no "real and appreciable impact" on the franchise rights of voters and therefore the rational basis test applied. The court held that the state's interests in managing ballot size and in ensuring that there are serious candidates who have a significant modicum of support, provided a rational basis for the challenged law.

 Similarly, we find that requiring a candidate to obtain 100 signatures from at least ten counties in the Commonwealth does not have a real and appreciable impact on voter's rights. The state's interest in managing the ballot size and ensuring statewide support for candidates provides a rational basis for the provision.

 Although voting is of the most fundamental significance under our constitutional structure, the right to associate for political purposes through the ballot is not absolute. *Burdick v. Takushi*, 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992). To subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest would tie the hands of states seeking to assure that elections are operated equitably and efficiently. *Id.*

Accordingly, we find that section 912.1(3) of the Election Code is constitutional. Because Berg failed to obtain 100 signatures from each of at least 10 counties, the Common-

wealth Court properly granted the motion to set aside nomination petition.[5]

FLAHERTY, C.J., concurs in the result.

5. Berg also contends that the challenge to his nomination petition lacked the required specificity. This claim is meritless as Berg concedes that the petition to set aside nomination petition listed the page number, page and line of each challenged signature and noted that the signatory was not registered in Dauphin County.