In Re: Nomination Petition of Dennis MORRISON–WESLEY As Candidate for the Democratic Nomination for State Treasurer in the Primary Election of April 22, 2008,

Objection of John D. Lisko.

Commonwealth Court of Pennsylvania.

Heard Feb. 29, 2008.
Decided March 11, 2008.
Ordered Published April 28, 2008.

Gregory M. Harvey, Philadelphia, for petitioner.

No appearance entered on behalf of respondent.

1. Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. § 2872.1(5), and it states, in relevant part, as follows:

Candidates for nomination of offices as listed below shall present a nominating petition containing at least as many valid signatures of registered and enrolled members of the proper party as listed below:

OPINION BY Judge LEAVITT.

Before this Court is a petition filed by John D. Lisko (Objector) to set aside the nomination petition of Dennis Morrison–Wesley (Candidate), a candidate who seeks the Democratic Party's nomination for State Treasurer in the primary election to be held on April 22, 2008. In his petition, Objector alleges that Candidate's nomination petition is fatally defective because it does not have the requisite number of signatures from the required number of counties. For his part, Candidate has moved to dismiss Objector's petition on several purely legal grounds. For the reasons set forth below, the Court denies Candidate's motion to dismiss and denies Objector's petition.

On February 12, 2008, Candidate's nomination petition was filed and accepted by the Secretary of the Commonwealth. Section 912.1(5) of the Pennsylvania Election Code,[1] requires a candidate for State Treasurer to obtain at least 1000 valid signatures from registered members of the candidate's party. In addition, the 1000 signatures must include 100 signatures from each of at least five counties.

On its face, Candidates 69–page petition meets and exceeds these requirements. Candidate obtained 1,931 signatures from 11 different counties. Six counties are represented by more than 100 elector signatures: Allegheny, Erie, Beaver, Lehigh, Dauphin, and Philadelphia Counties. The petitions circulated in the remaining counties, Westmoreland, Lawrence, York, Union and Lancaster Counties, showed fewer than 100 elector signatures.

\* \* \*

(5) Treasurer: One thousand including at least one hundred from each of at least five counties.

25 P.S. § 2872.1(5). Section 912.1 was added by the Act of December 12, 1984, P.L. 968, *as amended,* 25 P.S. 2872.1.

Objector filed his Petition to Set Aside Candidate's Nomination Petition on February 21, 2008, at 9:51 a.m., asserting that Candidate failed to satisfy the county distribution requirements of Section 912.1 of the Election Code. Objector asserted that Candidate failed to present 100 valid elector signatures from the Counties of Beaver and Lehigh. Specifically, Objector challenged 59 signatures in Beaver County as invalid, leaving only 59 valid signatures, and 61 signatures in Lehigh County as invalid, leaving only 81 signatures in Lehigh. Objector argued that Candidate's nomination petition was fatally defective because it presented 100 signatures from four counties instead of the required five counties.

In response, Candidate denied the allegations in Objector's petition. He also challenged the constitutionality of the distribution requirement in Section 912.1 of the Election Code as a violation of the "one man one vote" rule. Finally, he asserted that Objector's petition was required to be filed on February 19, 2008, but it was filed two days after that date.[2] Accordingly, Candidate requested the dismissal of Objector's petition.

On February 21, 2008, the Court issued a Scheduling and Case Management Order. It scheduled a hearing for Friday, February 29, 2008, and it directed the parties to file a stipulation by February 27, 2008, identifying those signatures the parties could agree to strike. The Order directed Objector to secure the services of a court stenographer for the hearing, and it warned that the failure to secure the services of a court stenographer could result in the dismissal of the matter.

On February 27, 2008, Objector filed a Report in Lieu of Stipulation with the Court in which Objector recited that he had been unable to meet with Candidate; Objector provided a list of witnesses. On February 28, 2008, Candidate filed a witness list,[3] identifying the circulator of the Lehigh County nomination petitions as a witness.

As scheduled, the hearing convened at 10:00 a.m., February 29, 2008, but the court stenographer was not present. The Court recessed to allow Objector to obtain another court reporter, and the hearing reconvened at 11:30 a.m. Candidate, appearing *pro se*, objected to the hearing taking place at the new hour, stating that he had been prejudiced by Objector's failure to produce a court reporter at 10:00 a.m. Candidate explained that his witness was not able to stay and testify at the postponed hearing time. Candidate requested the Court to dismiss Objector's petition, but the Court deferred ruling on that motion. The hearing proceeded.

Objector presented the testimony of an employee of the Office of Voter Registration for Lehigh County who administers the voter registration rolls on the SURE system.[4] The voter registration record of

---

**2.** On February 12, 2008, Governor Edward G. Rendell issued Executive Order No. 2008–1, which extended the filing deadline for all nomination petitions for candidates for election to public and political party offices from February 12, 2008, to February 14, 2008, due to a sudden and severe snowstorm that struck Pennsylvania on February 12. The Executive Order did not specify the date for the filing of objections to a nomination petition.

**3.** The Case Management Order directed Candidate to identify all witnesses he intended to have testify at the hearing by noon, February 27, 2008, and warned that any witness not so identified "shall be precluded from testifying, except for good cause shown." Case Management Order, ¶ 5.

**4.** The SURE system is the Statewide Uniform Registry of Electors, the statewide database of voter registration maintained by the Depart-

each elector's signature challenged by Objector was brought up on the SURE screen and examined by all parties and the Court. Objector also presented the testimony of a forensic document examiner, who testified that in several instances, the elector information, such as the address, for two different electors had been written by the same hand. Candidate cross-examined Objector's witness and he testified on his own behalf. However, Candidate did not present any witnesses or other evidence.[5]

The matter stands ready for disposition.

## MOTION TO DISMISS OBJECTORS PETITION

■ The Court first addresses Candidates motion to dismiss Objectors petition for the reason that it was filed untimely. Section 977 of the Election Code provides, in relevant part, as follows:

> All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, unless, *within seven days after the last day for filing* said nomination petition or paper, a petition is presented to the court specifically setting forth the objections thereto....

25 P.S. § 2937 (emphasis added). In short, the deadline to file objections does not begin to run until the last day to file a nomination petition has occurred, whatever day that might be. The last day to file a nomination petition this year was February 12, 2008. Governor Rendell, by Executive Order No. 2008–1, extended that deadline to February 14, 2008, because of

a sudden and severe snowstorm that struck Pennsylvania on February 12, 2008.[6]

Candidate asserts that the Executive Order extended the deadline for filing a nomination petition, but it did *not* extend the deadline for filing objections. It is true that the Executive Order was silent about the deadline for objections, but it is irrelevant. It was not necessary for the Governor to address the objection petition deadline in his Executive Order because that deadline is driven by the statutory formula in Section 977. The last day to file an objection is *"seven days after the last day for filing [the] nomination petition." Id.* The Executive Order established the nomination petition filing deadline to be February 14, 2008, and Section 977 established the deadline for objections to be February 21, 2008. Objector satisfied that deadline, and Candidate's motion to dismiss must be denied.

The Court also denies Candidate's motion to dismiss Objector's petition for the reason that Objector failed to produce a court reporter at the designated hour and place of hearing. It is within the discretion of the Court what, if any, sanctions to impose when its order is not strictly followed. Notably, Candidate also failed to comply strictly with the Case Management Order without sanction.

## SIGNATURE CHALLENGES

■ We next address Objector's signature challenges. The Election Code does not specify what is meant by a "valid signature" in Section 912.1(5) of the Elec-

---

ment of State and administered by each county.

**5.** The Court offered Candidate the opportunity to continue the hearing to another day to allow him to present his witness's testimony. Candidate declined.

**6.** No one questions the authority of the Governor to extend the deadline set forth in Section 977 of the Election Code.

tion Code. However, Section 908 of the Election Code directs that an elector must sign himself, be a member of the designated party, live in the appropriate district named on the petition, provide his address and date his signature. 25 P.S. § 2868.[7] Each item must be personally written by the elector. *In re Nomination Petition of Minotti*, 132 Pa.Cmwlth. 623, 574 A.2d 119 (1990). It is the objector's burden to prove that a signature is not valid on one of these grounds. *In re Nomination Petition of Johnson*, 509 Pa. 347, 354, 502 A.2d 142, 146 (1985). It is presumed that the signatures on a petition are valid. *In re Petition of Williams*, 155 Pa.Cmwlth. 494, 625 A.2d 1279, 1281 (1993).

As noted, Objector asserted in his petition that 59 of the 118 signatures presented for Beaver County were invalid, and 61 of the 142 signatures presented for Lehigh County were invalid. However, the Court's review determined that there were 124 signatures in Beaver County, not 118 as asserted by Objector, and that there were 148 signatures in Lehigh County, not 142 as asserted by Objector. Accordingly, the hearing concerned 59 of the 124 Beaver County signatures, and 61 of the 148 Lehigh County signatures. As the hear-

ing proceeded, Objector withdrew a number of objections.[8]

### Elector Not Registered

■ To be eligible to sign a nomination petition, the elector must be registered to vote and a member of the party designated on the nomination petition at the time of signing the petition. Section 908 of the Election Code, 25 P.S. § 2868; *In re Nomination Petition of Brown*, 846 A.2d 783, 788 (Pa.Cmwlth.2004). Candidate agreed to strike signatures that were not those of registered Democrats, and the use of the SURE system confirmed Objector's objections to signatures of electors that were not registered Democrats. Accordingly, the following signatures are stricken:

*Beaver County* Page 30, lines 10, 37, 49 Page 31, line 7 Page 33, line 15

*Lehigh County* Page 36, line 6 Page 37, lines 8, 14, 19, 23, 44 Page 38, lines 13, 22 Page 41, lines 6, 13, 14, 25, 26 Page 42, line 6

Based on this determination, the total number of valid signatures on the nomination petition is reduced to 119 for Beaver County and 134 for Lehigh County.

7. It states, in relevant part, as follows:
   Each signer of a nomination petition shall sign but one such petition for each office to be filled, and shall declare therein that he is a registered and enrolled member of the party designated in such petition. He shall also declare therein that he is a qualified elector of the county therein named, ... He shall add his residence, giving city, borough or township, with street and number, if any, and shall legibly print his name and add the date of signing, expressed in words or numbers:
   25 P.S. § 2868.

8. Objector either withdrew or did not present evidence on the following Beaver County signatures:

Page 30, lines 9, 20, 27, 28, 38, 39, 41, 48, 50
Page 31, lines 8, 9, 10, 11, 18, 19, 25, 40
Page 32, lines 2, 12
Page 33, lines 7, 10.
Objector either withdrew or did not present evidence on the following Lehigh County signatures:
Page 36, line 5
Page 37, lines 1, 20, 42
Page 38, lines 5, 6, 12, 26
Page 39, line 5
Page 40, line 11
Page 41, line 15.

## Stipulated Strikes

At the hearing, Candidate agreed to strike certain signatures, and the Court accepts the agreement of the parties. The signatures stricken are as follows:

*Beaver County* Page 33, lines 5, 16, 17

*Lehigh County* Page 37, lines 12, 39, 41 Page 40, line 6 Page 41, lines 16, 21, 23 Page 42, lines 5, 8, 12

Based on this determination, the total number of valid signatures on the nomination petition is reduced to 116 for Beaver County and 124 for Lehigh County.

## Date of Signing

■ Objector challenged signatures at page 31 of the Beaver County nominating petition because the date of signing was not provided. Instead, the elector filled in the space with a postal zip code. Objector challenged signatures on page 37 of the Lehigh County petition for the same reason.

■ The failure to provide the date of one's signing violates Section 908 of the Election Code and, thus, invalidates the signature.[9] *In re Nomination Petition of Silcox*, 543 Pa. 647, 650, 674 A.2d 224, 225 (1996). The date is essential to determine the validity of the signature.[10] Because they lack a date of signing, the following signatures are stricken:

*Beaver County* Page 31, lines 12, 13, 14, 15, 16, 17

*Lehigh County* Page 37, lines 4, 5, 6, 7

Based on this determination, the total number of valid signatures on the nomina-

tion petition is reduced to 110 for Beaver County and 120 for Lehigh County.

## Incomplete or Erroneous Addresses

■ Objector challenged signatures on page 33 of the nomination petition, which page relates to Beaver County, because they do not have the complete street address. Addresses must be complete. Section 908 of the Election Code states that each elector "shall add his residence, giving city, borough or township, with street and number, if any...." 25 P.S. § 2868. The Court finds that the following signatures on the nomination petition lack a complete address, and they are stricken in accordance with *In re Nomination Petition of Silcox*, 543 Pa. at 650, 674 A.2d at 225. They are as follows:

*Beaver County* Page 33, lines 1, 6, 18, 19

Based on this determination, the total number of valid signatures on the nomination petition is reduced to 106 for Beaver County.

■ With respect to Lehigh County, Objector challenged signatures on pages 37, 38, 39, 41 and 42 of the nomination petition for the reason that the elector's address on the petition does not conform to the elector's address as it appears on the voter registration card. For the same reason, Objector challenged signatures on pages 30, 31, 32 and 33 of the nomination petition that relate to Beaver County signatures.

■ Under Section 908 of the Election Code, the elector's address must conform

---

9. Section 908 of the Election Code requires the signer of a nomination petition to "add the date of signing, expressed in words or numbers" and states that "no signature shall be counted unless it bears a date affixed not earlier than the thirteenth Tuesday nor later than the tenth Tuesday prior to the primary." 25 P.S. § 2868.

10. Section 977 of the Election Code, 25 P.S. § 2937, provides that the date of signing will determine whether a signature is counted where the signer has signed more than one nomination petition. *In re Carter's Nomination Petition*, 398 Pa. 548, 549, 159 A.2d 691, 692 (1960).

to the elector's address as it appears on the voting registration card to ensure that the elector signing the petition is actually registered and resides in the correct district. *See In re Nader*, 580 Pa. 22, 858 A.2d 1167 (2004); *In re Nomination of Flaherty*, 564 Pa. 671, 770 A.2d 327 (2001). Having reviewed the evidence presented through the SURE system, the Court finds that the following electors' addresses do not match the addresses on their voter registration, and the following signatures are stricken:

> *Beaver County* Page 30, lines 6, 7, 18, 32, 47 Page 31, lines 2, 20, 24, 38, 39 Page 32, lines 4, 5, 6, 10, 11 Page 33, lines 2, 14

> *Lehigh County* Page 37, lines 10, 26 Page 38, lines 10, 15, 18 Page 39, lines 1, 2, 3, 7 Page 41, lines 4, 9, 24, 32 Page 42, lines 3, 4

Based on this determination, the total number of valid signatures on the nomination petition is reduced to 89 for Beaver County and 105 for Lehigh County.

### Same Person Signs For Another

■ Objector asserted that certain signatures are not valid because a single person signed for two electors, either by signing the name of the second elector or by filling in the second elector's required information, such as address and date of signing. With respect to Lehigh County, Objector challenged the signatures on pages 37 and 39 for this reason.

■ Where a court finds that signatures are not genuine because they are in the same handwriting, the signatures will be stricken. *In re Nomination Petition of Minotti*, 132 Pa.Cmwlth. 623, 574 A.2d 119 (1990). Having heard the testimony of the forensic expert and reviewed the signatures, this Court strikes the second signature on these objections as not genuine.

The following signatures are stricken as not genuine:

> *Lehigh County* Page 37, lines 2, 43 Page 38, line 27 Page 39, line 6

Based on this determination, the total number of valid signatures on the nomination petition is reduced to 101 for Lehigh County.

### Signature Crossed Out

Objector asserted that three signatures on the nomination petition that pertain to Lehigh County are not valid because they have been "struck through before filing." Petition to Set Aside, Exhibit A, at p. 3.

■ The first such objection in Objector's petition was to the signature on page 41, line *2*. At the hearing Objector asserted that the reference to line 2 was an obvious typographical error and that the actual reference was to line 3. This court has discretion to allow objections to be amended at the hearing. *Stuski v. Lauer*, 548 Pa. 338, 697 A.2d 235 (1997). Objector's petition identified the signature on page 41, line 2 as invalid because it was "struck through before filing." This is specific enough to give fair notice of the nature of the deficiency and it is obviously directed to the *adjacent* signature line, line 3, which was "struck through." The Court finds that the incorrect reference to line 2 was amendable to designate line 3.

■ In addition to the signature on page 41, line 3, Objector's petition objects to the signatures on page 41, lines 8 and 10 of the nomination petition for the stated reason that they have been "struck through before filing." The nomination petition shows both signature lines completed in black ink, lined through in both blue and red ink, with the number prefacing the signatures circled.

Objector produced no evidence to support the claim that the nomination petition

was filed with the strikings, as asserted. Further, he produced no evidence to explain whether the strikings were intended by Candidate or whether they were done accidentally, either by an employee of the Secretary of the Commonwealth or by a child of a circulator. It is not enough for an objector to state the obvious, *i.e.*, that a line appears through a signature line. The objector must offer substantive reasons why a signature should be stricken beyond the mere existent of a line. The Court has explained:

> While I note the presence of red circles and "x" marks adjacent to these lines, there was no agreement of counsel as to who made these notations or when they were made. Further, I can find no statute, regulation or other information of which I can take judicial notice that such marks represent strikes by the Secretary of State, and no evidence was presented upon which I could base such a finding. Moreover, even *assuming* that these marks represent [the Secretary's] strikes, the lack of any requirement that the Secretary memorialize his actions and the reasons for them in some more formal way strongly suggests that his strikes are intended to be for his administrative use in carrying out his duties under Section 976 of the Election Code, *as amended*, 25 P.S. § 2936, and that once he accepts nomination papers for filing, our review of any objections to the papers is de novo.

*In re Nader*, 865 A.2d 8, 262 (Pa.Cmwlth. 2004). Accordingly, even if the signature was stricken by the Secretary of the Commonwealth, the objector must show why the Secretary's action was substantively correct and should be affirmed by the court. ▇▇▇▇ Objector did not make his case on lines 8 and 10 of page 41 because, on its face, each signature appears complete.

Objector did not offer authority to support his proferred legal conclusion that the mere existence of a line through a signature invalidates it. He presented no evidence about who drew the line, or when or why it was drawn. The proponent of a proposition must bear the burden of its proof. *In re Petition of Johnson*, 509 Pa. at 354, 502 A.2d at 146. It is unknown why a line appears through the signatures on lines 8 and 10 of page 41, and the Court must give a liberal construction to the Election Code. *In re Nomination Petitions of McIntyre*, 778 A.2d 746, 751 (Pa. Cmwlth.2001). Accordingly, the objections to lines 8 and 10 of page 41 must be denied.

▇▇▇▇ On the other hand, the objection to page 41, line 3 will be sustained. In addition to noting the line through the signature, Objector pointed out at the hearing that the signature was not valid because it lacked required elector information such as a printed signature, address or date of signing. These defects rendered the signature invalid under Section 908 of the Election Code.

Based on this determination, the total number of valid signatures for Lehigh County is reduced to 100.

## CONCLUSION

Based on the above findings, 89 signatures out of the 124 signatures for Beaver County are valid, and 100 signatures out of the 148 signatures for Lehigh County are valid. In sum, Candidate's nomination petition contains 100 valid signatures from five different counties, which is the number required under Section 912.1(5) of the Election Code, 25 P.S. § 2872.1(5). Accordingly, Objector's Petition to Set Aside Candidate's Nomination Petition is de-

nied.[11]

## ORDER

AND NOW, this 11th day of March, 2008, the Candidate's motion to dismiss the Objector's petition is hereby DENIED, and the petition filed by John D. Lisko (Objector) to set aside the nomination petition of Dennis Morrison–Wesley as a candidate for the Democratic Party in the general primary for the Office of State Treasurer, is hereby DENIED.

It is further ORDERED that each party shall bear their own costs.

The Secretary of the Commonwealth of Pennsylvania is DIRECTED to include Dennis Morrison–Wesley on the ballot as candidate for the Office of State Treasurer of the Commonwealth of Pennsylvania.

The Chief Clerk is hereby DIRECTED to notify the parties hereto and their counsel of this order and also to certify a copy hereof to the Secretary of the Commonwealth of Pennsylvania.

11. Because we have found that Candidate's nomination petition complies with Section 912.1(5) of the Election Code, we need not address Candidate's constitutional argument. In *Cavanaugh v. Schaeffer*, 65 Pa.Cmwlth. 620, 444 A.2d 1308 (1982), *aff'd per curiam*, 498 Pa. 102, 444 A.2d 1165 (1982), our Supreme Court ruled on the county distribution required in Section 912(b) of the Election Code as it applied to candidates for the office of Justice of the Supreme Court of Pennsylvania. That provision required candidates for the office of Justice of the Supreme Court of Pennsylvania to obtain 100 valid signatures from each of five counties. This Court upheld the constitutionality of the statute, distinguishing *Moore v. Ogilvie*, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969), on its facts. The population disparity in Pennsylvania does not create a situation where a minority of the population can exercise a veto power over that of the majority. The Court relied upon the proposition that a "discriminatory law must have a real and appreciable *impact* on voters' rights" before the strict scrutiny test is applied in such a challenge. *Cavanaugh*, 444 A.2d at 1311, citing *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972) (emphasis in original). The Court held that the state's interest in managing ballot size and in ensuring that there are serious candidates, who have a significant modicum of support, provided a rational basis for the challenged law. The same result was reached in *Petition of Berg*, 552 Pa. 126, 713 A.2d 1106 (1998), which concerned the county distribution requirement for gubernatorial candidates. This Court is bound by the precedent of *Cavanaugh* and *Berg*.