# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In The Matter Of:                 :

                                     :

Nomination Papers of Randall Taylor   :     No.  1256 C.D. 2019

dated July 31, 2019 and August 1, 2019   :

                                     :

Appeal of:  Owen Cauley           :

## *AMENDING ORDER*

AND NOW, this 21st day of October, 2019, the Order in the above matter, originally filed as unpublished on September 30, 2019, and re-filed this day as a published opinion, is amended to reflect the following correction:

> AND NOW, this 30th day of September, 2019, the order of
> the Court of Common Pleas of Allegheny County, dated
> ~~September 30, 2019~~ August 27, 2019, is hereby affirmed.

_____

PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In The Matter Of: : 
: 
Nomination Papers of Randall Taylor : No. 1256 C.D. 2019
dated July 31, 2019 and August 1, 2019 :
: Submitted: September 20, 2019
Appeal of: Owen Cauley :


BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE P. KEVIN BROBSON, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge


OPINION BY
JUDGE McCULLOUGH                    FILED: September 30, 2019


Owen Cauley (Objector) appeals from the August 27, 2019 order of the Court of Common Pleas of Allegheny County (trial court) overruling his objections and allowing Randall Taylor (Candidate) to remain on the ballot as an Independent candidate for the office of Pittsburgh City Council, District 9.


## Facts and Procedural History

The underlying facts do not appear to be in dispute. On July 31, 2019, Candidate filed his original nomination papers with the Allegheny County Elections Division (Elections Division).[1] Upon review, the Elections Division accepted the

---

[1] We note that nomination petitions are filed by candidates representing the major political parties whereas nomination papers are filed by candidates representing minor political parties or those seeking nomination by an independent political body. *See* Sections 102, 801, 907, 912.2 and 951 of the Pennsylvania Election Code (Election Code), Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S.

original nomination papers as they contained the requisite 100 signatures needed to run for the office of Pittsburgh City Council.[2] *See* Section 912.1(31.1) of the Election Code (requiring 100 signatures for the "Office of district council member in a city of the second class").[3] On August 1, 2019, at 11:29 a.m., another candidate for the same office, DeNeice B. Welch, sought to file her nominations papers as an Independent candidate. However, because Candidate had already filed as an Independent, and consistent with section 952 of the Election Code, 25 P.S. §2912,[4] the Elections Division

---

§§2602, 2831, 2867, 2872.2, 2911. Section 912.2 was added by the Act of February 19, 1986, P.L. 29.

[2] Our review of the record reveals that Candidate's original nomination papers included a total of 112 submitted signature lines. However, 12 of these lines have a slash mark through the line number on the face of the original nomination papers, representing lines that contained a phone number of an elector in the box for house number or incomplete or crossed-out lines, thereby leaving Candidate with 100 signature lines. Thus, it appears that, contrary to Objector's assertion in his brief, the Elections Division did strike and not count signature lines on Candidate's original nomination papers.

[3] 25 P.S. §2872.1 (31.1). Section 912.l was added by the Act of December 12, 1984, P.L. 968.

[4] Section 952 provides, in pertinent part, as follows:

> No words shall be used in any nomination paper to designate the name or appellation of the political body represented by the candidates named in such nomination paper which are identical with or deceptively similar to the words used for a like purpose by any existing political party as defined by section 801 of this act, or which contain part of the name or an abbreviation of the name or part of the name of any existing political party; nor shall any words be used in any nomination paper to designate the name or appellation of the political body represented by the candidate's name in such nomination paper which are identical with or deceptively similar to the words used for a like purpose by any political body which has already filed nomination papers for the same office nor which contain part of the name or an abbreviation of the name or part of the name of a political body which has already filed nomination papers for the same office.

advised Welch that she could not use the appellation of Independent. Welch subsequently crossed out Independent on the line identifying the political body on her nomination papers and inserted Citizens for Welch.[5] Approximately two and a half hours later, at 2:01 p.m. on August 1, Candidate filed supplemental nomination papers containing approximately 200 additional signatures.[6]

On August 8, 2019, Objector filed his objections to Candidate's nomination papers, asserting that the original nomination papers filed on July 31, 2019, must be set aside because they lacked the required minimum number of signatures under section 912.1(31.1) of the Election Code. More specifically, Objector claimed that such papers included numerous signatures that were facially defective, *i.e.*, signatures that were dated subsequent to the date of the circulator's affidavit as well as several signatories of individuals who reside outside of the City of Pittsburgh, which reduced the number of valid signatures below the 100-signature threshold. Since Candidate would not have been able to file these papers without the required number of signatures, Objector asserted that Welch was the first to file as an Independent candidate. Moreover, Objector claimed this would require that Candidate's supplemental nomination papers reflecting his political body as Independent be set aside as violative of section 952 of the Election Code.

---

25 P.S. §2912 (emphasis added). *See also* Section 976 of the Election Code, which provides, in pertinent part, that "[n]o . . . nomination paper . . . shall be permitted to be filed if . . . (g) . . . the appellation set forth therein is identical with or deceptively similar to the words used . . . by any political body which has already filed nomination papers for the same office." 25 P.S. §2936.

[5] The propriety of such action by Welch was an issue before this Court in the related matter of *In Re: Nomination Papers of B. DeNeice Welch as a Candidate for Pittsburgh City Council-District 9, Appeal of: Carmen Brown* (Pa. Cmwlth., No. 1257 C.D. 2019, filed September 27, 2019).

[6] Interestingly, these supplemental nomination papers appear to have been circulated, and signatures obtained, contemporaneously as those on Candidate's original nomination papers.

The trial court heard argument with respect to these objections on August 27, 2019. Counsel for the Elections Division noted that, after a facial review by personnel of the Elections Division, Candidate's original nomination papers included 100 signatures and were accepted for filing. Counsel also noted that, the next day, the Elections Division accepted Candidate's supplemental nomination papers which included an additional 297 signatures. David Voye of the Elections Division advised the trial court that the signatures noted by Objector were not stricken at the counter and perhaps were not noticed by personnel. He stated that the nomination papers "probably should have been checked and [the signatures] not counted with [Candidate's total]." (N.T., August 27, 2019, at 38.) Upon questioning by the trial court, Voye indicated that had these signatures been stricken, Candidate's original nomination papers would have been handed back to him.

At the conclusion of the hearing, the trial court stated that, because the Elections Division conducted a facial examination of Candidate's original nomination papers and concluded that they contained the required 100 signatures, it was overruling the objections. The trial court issued an order that same day reflecting its decision.[7] Objector filed a notice of appeal. On September 11, 2019, the trial court issued an opinion in support of its order reiterating that the Elections Division accepted Candidate's nomination papers after a facial examination revealed 100 signatures and, hence, Candidate should remain on the ballot as an Independent.

**Discussion**

On appeal, Objector raises three issues. First, Objector argues that the trial court abused its discretion and erred as a matter of law in holding that the Elections Division properly accepted Candidate's original nomination papers in light of the admitted multiple facial deficiencies contained therein. Second, Objector argues that

---

[7] This order was not entered on the docket until September 3, 2019.

4

Candidate's original bad faith filing adversely impacted the rights of every third-party candidate and resulted in incorrect political body designations. Third, Objector argues that Candidate's supplemental nomination papers were void as violative of section 951(d) of the Election Code, 25 P.S. §2911(d) (requiring nomination papers to be "bound together when offered for filing if they are intended to constitute one nomination paper, and each sheet shall be numbered consecutively, beginning with number one (1) at the foot of each page").

## Candidate's Original Nomination Papers

As noted above, Objector first argues that the trial court abused its discretion and erred as a matter of law in holding that the Elections Division properly accepted Candidate's original nomination papers in light of the admitted multiple facial deficiencies contained therein. In this regard, we note that Objector is not seeking to challenge the validity of the individual signature lines in and of themselves. Rather, Objector is alleging that the Elections Division had a mandatory duty to strike certain signature lines upon its review of Candidate's original nomination papers.

More specifically, Objector notes the following deficiencies in Candidate's original nomination papers:

> Page 1, Line 19 – signature dated August 29, 2019, which is subsequent to the date of the circulator's affidavit (July 30, 2019)[8]

> Page 2, Lines 4-6 – signed by individuals from the City of Clairton, not the City of Pittsburgh

> Page 2, Lines 20, 35-36, 38-40 – signatures dated July 31, 2019, which is subsequent to the date of the circulator's affidavit (July 30, 2019)

---

[8] This line appears to have been struck and not counted by the Elections Division.

5

> Page 3, Lines 26, 38-39 – each of these lines was crossed out[9]
>
> Page 4, Line 11 - signatures dated July 29, 2019, which is subsequent to the date of the circulator's affidavit (July 27, 2019)

Had these signatures not been counted by the Elections Division, Objector contends that Candidate would not have met the 100-signature requirement. Objector relies on the statements of Voye at the hearing before the trial court for support, *i.e.*, these signatures probably should have been stricken at the counter and Candidate's original nomination papers returned to him. Objector also relies on section 976 of the Election Code, which requires a county board of elections to examine a nomination paper and reject its filing if "it contains material errors or defects apparent on the face thereof." 25 P.S. §2936.

> Section 976 states, in pertinent part, that:
>
> When any nomination petition, nomination certificate or nomination paper is presented in the office of the Secretary of the Commonwealth or of any county board of elections for filing within the period limited by this act, **it shall be the duty of the said officer or board to examine the same**. **No nomination petition, nomination paper or nomination certificate shall be permitted to be filed if**—(a) it contains **material errors or defects** apparent on the face thereof, or on the face of the appended or accompanying affidavits; or (b) it contains material alterations made after signing without the consent of the signers; or (c) it **does not contain a sufficient number of signatures** as required by law; Provided, however, That the Secretary of the Commonwealth or the county board of elections, **although not hereby required so to do, may question the genuineness of any signature or signatures** appearing thereon, and if he or it shall thereupon find that any such signature or signatures are not genuine, such signature or

---

[9] These lines also appear to have been struck and not counted by the Elections Division.

signatures shall be disregarded in determining whether the nomination petition, nomination paper or nomination certificate contains a sufficient number of signatures as required by law; or (d) in the case of nomination petitions, if nomination petitions have been filed for printing the name of the same person for the same office, except the office of judge of a court of common pleas, the Philadelphia Municipal Court or the Traffic Court of Philadelphia, or the office of school director in districts where that office is elective or the office of justice of the peace upon the official ballot of more than one political party; or (e) in the case of nomination papers, if the candidate named therein has filed a nomination petition for any public office for the ensuing primary, or has been nominated for any such office by nomination papers previously filed; or (f) if the nomination petitions or papers are not accompanied by the filing fee or certified check required for said office; or (g) in the case of nomination papers, the appellation set forth therein is identical with or deceptively similar to the words used by any existing party or by any political body which has already filed nomination papers for the same office, or if the appellation set forth therein contains part of the name, or an abbreviation of the name or part of the name of an existing political party, or of a political body which has already filed nomination papers for the same office.

. . .

Upon completion of any examination, **if any nomination petition, certificate or paper is found to be defective, it shall forthwith be rejected and returned** to the candidate or one of the candidates named therein, together with a statement of the reasons for such rejection . . . .

25 P.S. §2936 (emphasis added).  This Court has previously identified such material errors or defects stricken by the Secretary and/or the county board of elections.  *See*, *e.g.*, *In re Nomination Paper of Nader*, 865 A.2d 8, 262 (Pa. Cmwlth.), aff'd, 860 A.2d 1 (Pa. 2004) (Secretary struck crossed-out signature lines).

Here, it appears that there were 12 incorrect, incomplete, or scratched out lines which were apparent on the face of the papers and do not appear to have been

7

counted in the total signature tally by the Elections Division. Nevertheless, even subtracting these signature lines, the Elections Division still found 100 purportedly valid signatures. Thus, it appears appropriate that the Elections Division accepted Candidate's original nomination papers, concluding that they contained the requisite 100 signatures. Consistent with section 977 of the Election Code,[10] 25 P.S. §2937, Candidate's original nomination papers were deemed valid upon filing, albeit subject to any objections filed with the court within seven days of the last day for filing said nomination paper. Section 977 directs the court to fix a time for hearing and further provides that, with respect to "material errors or defects apparent on the face of the nomination petition or paper, the court, after hearing, may, in its discretion, permit amendments within such time and upon such terms as to payment of costs, as the said court may specify." *Id.*; *see also Ochman Appeal*, 73 A.2d 34 (Pa. 1950) (holding that the common pleas court acted within its statutory authority in allowing amendments to

---

[10] Section 977 provides, in pertinent part, that:

> All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court specifically setting forth the objections thereto, and praying that the said petition or paper be set aside. A copy of said petition shall, within said period, be served on the officer or board with whom said nomination petition or paper was filed. Upon the presentation of such a petition, the court shall make an order fixing a time for hearing which shall not be later than ten days after the last day for filing said nomination petition or paper, and specifying the time and manner of notice that shall be given to the candidate or candidates named in the nomination petition or paper sought to be set aside. On the day fixed for said hearing, the court shall proceed without delay to hear said objections, and shall give such hearing precedence over other business before it, and shall finally determine said matter not later than fifteen (15) days after the last day for filing said nomination petitions or papers.

25 P.S. §2937.

the dates of the circulator affidavits which appeared to be executed prior to the date of certain electors' signatures on a candidate's nomination petition). Moreover, even if a signature is stricken by the Secretary or county board of elections, an objector must still list the stricken signature in his objections and "show why the Secretary's action was substantively correct and should be affirmed by the court." *In re Morrison-Wesley*, 946 A.2d 789, 797 (Pa. Cmwlth.), aff'd, 944 A.2d 78 (Pa. 2008). As this Court noted in *In re Nader*, "the lack of any requirement that the Secretary memorialize his actions and the reasons for them in some more formal way strongly suggests that his strikes are intended to be for his administrative use in carrying out his duties under Section 976 of the Election Code, *as amended,* 25 P.S. §2936, and that once he accepts nomination papers for filing, our review of any objections to the papers is de novo." 865 A.2d at 262.

In other words, section 976 directs the Secretary or county board of elections to identify and strike obvious errors or defects apparent on the face of the nomination papers. Traditionally, such defects include crossed out lines or lines that are missing all or some of the required elector information. As noted above, there appears to be 12 lines which were struck by the Elections Division as a result of the same. However, even with the exclusion of these signatures, there appears to be 100 signatures to be challenged. These 100 signatures were sufficient for the Elections Division to accept Candidate's original nomination papers. But, here, Objector argues that the Elections Division should have gone even farther, conducted an inquiry line-by-line for potential challenges, and struck additional lines that he believed were invalid on the face of the nomination papers. Given the severe time constraints involved in election matters and the sheer number of objections received by the Secretary or the county board of elections, the specific relief requested by Objector herein would impose an impossible and unreasonable burden on the personnel

9

reviewing nomination petitions/papers to analyze each item of information provided therein to compare the dates of signing of the elector and the circulator or to review the municipality/district in which the elector resides.

After performing its administrative function and reviewing Candidate's original nomination papers, the Elections Division accepted the same for filing, with an apparent total of 100 signatures left to be challenged and thereby rendering the papers valid under section 977. Objector has cited no authority, and this Court has not found any, which essentially allows us to usurp the administrative function of the Elections Division and retroactively reject Candidate's original nomination papers. Because these papers apparently contained the required 100 signatures for the office of Pittsburgh City Council, and Objector is not here challenging the validity of the aforementioned signature lines in and of themselves, we cannot say that the trial court abused its discretion or erred as a matter of law in holding that the Elections Division properly accepted Candidate's original nomination papers for filing.

Accordingly, the order of the trial court is affirmed.[11]

_____
PATRICIA A. McCULLOUGH, Judge

---

[11] In light of our determination above, we need not address the remaining issues raised by Objector relating to bad faith and the supplemental nomination papers.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In The Matter Of:                          :
                                           :
Nomination Papers of Randall Taylor        :    No.  1256 C.D. 2019
dated July 31, 2019 and August 1, 2019     :
                                           :
Appeal of:  Owen Cauley                    :


## ***ORDER***


AND NOW, this 30th day of September, 2019, the order of the Court of Common Pleas of Allegheny County, dated August 27, 2019, is hereby affirmed.


_____
PATRICIA A. McCULLOUGH, Judge