# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Nomination Petition of Joseph : 
Vodvarka as a Candidate of the : 
Democratic Party for the : 
United States Senate in the : No. 126 M.D. 2016
Primary Election of April 26, 2016 : Submitted: March 18, 2016
  : 
Petition of: Joseph A. Sestak, Jr. : 


BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE ROBERT SIMPSON, Judge
HONORABLE P. KEVIN BROBSON, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE MICHAEL H. WOJCIK, Judge


**OPINION BY JUDGE BROBSON**       **FILED: March 30, 2016**


Before this Court is a petition filed by Joseph A. Sestak, Jr. (Objector or Sestak), to set aside the nomination petition of Joseph Vodvarka (Candidate or Vodvarka) as a Democratic Party candidate for the United States Senate. Candidate seeks to appear on the ballot in the primary election scheduled for April 26, 2016. Objector contends that Candidate's nomination petition lacks the minimum number of valid signatures required by law to appear on the primary election ballot. The parties have filed a Stipulation of Facts (Stipulation) and a memorandum of law or brief in support of their respective positions. Upon consideration of the same, and for the reasons set forth below, we grant Objector's petition to set aside Candidate's nomination petition.

To appear on the primary election ballot as a candidate for the office of United States Senator, Section 912.1(2) of the Pennsylvania Election Code (Election Code)[1] requires 2,000 valid signatures of registered electors who are members of the party whose nomination is sought. Candidate filed with the Department of State a nomination petition, consisting of 137 pages and purporting to contain 2,744 signatures. Objector, in his petition to set aside, challenged numerous individual signatures on Candidate's nominating petition as invalid for a variety of reasons. Pursuant to this Court's scheduling and case management order, the parties reviewed each and every challenged signature line and entered into the Stipulation.

The parties stipulated that, after striking certain signatures by agreement, 2,186 signatures remain on the nomination petition.[2] The parties also stipulated, as follows:

---

[1] Section 912.1(2) of the Act of June 3, 1937, P.L. 1333, added by the Act of December 12, 1984, P.L. 968, *as amended*, 25 P.S. § 2872.1(2). Section 912.1(2) of the Election Code provides:

> Candidates for nomination of offices as listed below shall present a nominating petition containing at least as many valid signatures of registered and enrolled members of the proper party as listed below:
>
> . . . .
>
> (2) United States Senate: Two thousand.

[2] The parties stipulated that Candidate's nomination petition, as originally filed, contains a total of 2,744 signatures. (Stipulation filed March 11, 2016 (Stip.), ¶ 1.) They also stipulated that 558 signatures are stricken by agreement of the parties, leaving 2,186 signatures remaining on the nomination petition. (Stip. ¶¶ 2, 3.) They agree that if 187 or more of those remaining signatures are stricken or rejected for any reason, Candidate's nomination petition will not contain a sufficient number of valid signatures to enable Candidate to qualify for the ballot. (Stip. ¶ 3.)

4.     Of the remaining 2,186 entries on the Vodvarka Nomination Petition, 461 entries contain a name and signature matching that of a[] person registered to vote in the county reflected on the Petition page containing the entry, but the address provided in the entry does not match the address on record in the SURE[3] system for the individual of that name. . . .  [T]hese 461 entries . . . are generally referred to by the parties as the 'NRA entries' ("NRA" meaning Not Registered at the Address set forth on the Petition) . . . .

5.     The treatment of the 461 NRA entries presents a common and singular question of law for the Court, and the Court's determination of that question of law shall be determinative of the viability of every entry in the group. If the Court accepts Objector Sestak's contention that the NRA entries are defective, then the Vodvarka Nomination Petition will not contain a sufficient number of valid signatures to enable Vodvarka to qualify for the ballot.  In that event, the Vodvarka Nomination Petition shall be stricken and Vodvarka shall not appear on the ballot as a candidate for the nomination of the Democratic Party for US Senate in the upcoming Primary Election on April 26, 2016.

6.     Of the remaining 2,186 entries on the Vodvarka Nomination Petition, 220 entries contain a name, signature, and street address matching that of an individual registered to vote in the county reflected on the Petition page containing the entry, but the place set forth in the 'City, Boro or Twp.' section of the entry does not match the political subdivision on record in the SURE system for the individual of that name and street address. . . .  [T]hese 220 entries . . . are generally referred to by the parties as the 'MUN entries' ('MUN' meaning the entry sets forth the wrong MUNicipality). . . .

---

[3] SURE is the acronym for the Statewide Uniform Registry of Electors.

7.     The treatment of the 220 MUN entries presents a common and singular question of law for the Court, and the Court's determination of that question of law shall be determinative of the viability of every entry in the group. If the Court accepts Objector Sestak's contention that the MUN entries are defective, then the Vodvarka Nomination Petition will not contain a sufficient number of valid signatures to enable Vodvarka to qualify for the ballot. In that event, the Vodvarka Nomination Petition must be stricken and Vodvarka shall not appear on the ballot as a candidate for the nomination of the Democratic Party for US Senate in the upcoming Primary Election on April 26, 2016.

(Stip. ¶¶ 4-7.)[4]  In order to dispose of the above-described objections, the parties further stipulated to waive their right to an evidentiary hearing, agreeing instead to have the legal issues submitted to the Court on briefs and without oral argument for disposition on the stipulated facts.  (Stip. ¶ 10.)

The two legal issues for consideration by this Court are as follows: (1) whether the NRA signatures must be stricken because the signer's address does not match the address listed in the voter registration records, even though the parties agree that the signature on the nomination petition matches the signature on the voter registration record;[5] and (2) whether an elector's signature may be

---

[4] The parties also stipulated that other signatures were challenged based upon defective circulator's affidavits, but that Candidate could cure those defects by filing an affidavit with this Court, which he did on March 14, 2016.  Objector has now withdrawn the objections based on defective circulator's affidavits.  (Objector's Br. at 4 n.1.)

[5] Candidate characterizes the issues somewhat differently—whether, under existing federal and state law, registered voters remain registered voters "when they change their residence within the county in which they are registered to vote without first updating their address with the voter registration authorities." (Candidate's Br. at 8.)  This phrasing appears to presuppose that if the addresses are different but the signatures match, the elector must have moved within the county.  Such a presumption may not always be true, and we note that the Stipulation does not indicate that the parties agree that the signers of the NRA entries actually **(Footnote continued on next page…)**

4

stricken from a nomination petition when the elector uses the address set forth in his voter registration record instead of setting forth his street address and municipality.

At the outset, we begin our analysis by noting that the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591 (Election Code), is to "be liberally construed so as not to deprive an individual of his right to run for office or the voters of their right to elect the candidate of their choice." *In re Nomination Petition of Wesley*, 640 A.2d 1247, 1249 (Pa. 1994). A party alleging defects in a nomination petition has the burden of proving such defects. *In re Johnson*, 502 A.2d 142, 146 (Pa. 1985). The placement of this burden on an objector recognizes that there is a presumption that the signatures on a petition are valid. *In re Creighton*, 899 A.2d 1166, 1168 (Pa. Cmwlth.) (Leavitt, J.), *aff'd per curiam*, 896 A.2d 583 (Pa. 2006).

Section 907 of the Election Code, 25 P.S. § 2867, provides, in part, that persons who sign a nomination petition must be "duly registered and enrolled members of" the same party as the candidate and be "qualified electors of the State, or of the political district, as the case may be, within which the nomination is to be made or election is to be held." Section 908 of the Election Code, 25 P.S. § 2868, provides, in part, that a person signing a nomination petition

> shall add his residence, giving city, borough or township, with street and number, if any, and shall legibly print his name and add the date of signing, expressed in words or

---

**(continued…)**

moved within, let alone reside within, the county. Rather, they essentially agree that the addresses differ but the signatures match.

numbers: Provided, however, That if the said political district named in the petition lies wholly within any city, borough or township, or is coextensive with same, it shall not be necessary for any signer of a nomination petition to state therein the city, borough or township of his residence.

With regard to the first legal issue, the parties' positions may be summarized as follows. Objector contends that absent extraordinary circumstances, which Candidate must prove, the NRA entries must be stricken as invalid. Objector relies on the Pennsylvania Supreme Court's decisions in *In re Nomination Petition of Flaherty*, 770 A.2d 327 (Pa. 2001), and *In re Nomination Papers of Nader*, 858 A.2d 1167 (Pa. 2004), and this Court's reported single-judge opinion *In re Nomination Petition of Vodvarka*, 994 A.2d 25 (Pa. Cmwlth. 2010) (Leavitt, J.).[6,7] Candidate contends that if the elector's signature on the nomination petition matches a signature on the voter registration record, then that signature can be counted as valid, provided that the elector is otherwise qualified, notwithstanding the discrepancy in address. Candidate maintains that nothing in the Election Code requires a signer to record on a nomination petition the address at which he resided at the time that he executed his voter registration application. It only requires that he write his current residence. Moreover, because he is seeking to be placed on the ballot for a federal office, Candidate argues that the National Voter Registration Act of 1993, 42 U.S.C. §§ 1973gg-1 to 1973gg-10,

---

[6] Objector also notes that the Pennsylvania Supreme Court more recently referred to its holding in *Flaherty* regarding signatures not matching a registered elector's address in *In re Nomination Petition of Gales*, 54 A.3d 855 (Pa. 2012).

[7] As a reported, single-judge opinion in an election law matter filed prior to October 1, 2013, *Vodvarka* has only persuasive value. Commonwealth Court Internal Operating Procedure (IOP) 414(b), (d), 210 Pa. Code § 69.414(b), (d).

6

transferred to 52 U.S.C. §§ 20501-20511 (NVRA), controls and limits the circumstances under which a State may remove a registered voter from registration rolls. Candidate cites the United States Court of Appeals for the Third Circuit decision in *Welker v. Clarke*, 239 F.3d 596 (3d Cir. 2001), which upheld an injunction against Pennsylvania election officials for enforcing provisions of the Election Code that conflicted with the NVRA for federal elections. According to Candidate, any continued reliance on *Flaherty* with regard to the issue now before the Court is misplaced.

Our analysis begins with *Flaherty*. In *Flaherty*, the Supreme Court considered the question of whether signatures on a nomination petition must be struck where the address provided by the signatory did not match that of any person by that name in the voter registration records of the signatory's county of residence and determined such entries to be invalid. The Supreme Court held that "absent extraordinary circumstances, electors who declare a residence at an address different than the address listed on their voter registration card are not qualified electors at the time they sign a nomination petition unless they have completed the removal notice required by the [Pennsylvania] Voter Registration Act [(PVRA)].[8]" *Flaherty*, 770 A.2d at 333. The Supreme Court in *Flaherty* reached this conclusion after examining provisions of the Election Code, which the legislature repealed the following year, relating to removal of electors from the voter registration record of a county, observing:

---

[8] Act of June 30, 1995, P.L. 170, *as amended*, 25 P.S. §§ 961.101-961.5109, repealed by the Act of January 31, 2002, P.L. 18, and replaced by what is known as the new Pennsylvania Voter Registration Act, 25 Pa. C.S. §§ 1101-3302.

> A person is required to indicate, under penalty of perjury, his or her place of residence in order to register as an elector. 25 P.S. § 961.501. Furthermore, when electors move either within the same county or to another county within the Commonwealth, they must notify the registration commission of their new address by filing a removal notice generally no later than 30 days preceding an election. 25 P.S. §§ 961.901-961.902. Indeed, the registration commission must verify the residences of registered electors to insure that the qualified elector actually resides at the address listed on his voter registration card. 25 P.S. §§ 961.906-961.907[.]

*Flaherty*, 770 A.2d at 333.

The Supreme Court in *Flaherty* also noted that both the Supreme Court and the Commonwealth Court had issued decisions in which they concluded that electors must notify authorities of a change in address in order to remain qualified electors. *See In re Nomination Petition of Wesley*, 640 A.2d 1247, 1250 (Pa. 1994); *In re City of Pittsburgh Home Rule Charter*, 694 A.2d 1128, 1132 (Pa. Cmwlth. 1997). Citing those cases and Section 908 of the Election Code, the Supreme Court reasoned that "[w]here electors fail to properly notify authorities of a change in address, those electors' voter registrations are terminated and thus, they are clearly disqualified from signing a nomination petition as a registered and enrolled elector." *Flaherty*, 770 A.2d at 334. *Flaherty*, thus, rejected the reasoning set forth in this Court's earlier conflicting decision in *In re Nomination Petition of Cooper*, 643 A.2d 717 (Pa. Cmwlth. 1994), wherein we held that even if an elector's address is not identical to that found on the elector's registration card, the elector's signature should not be struck absent an allegation that the elector does not actually live at the address indicated on the petition.

The Pennsylvania Supreme Court in *Nader* implicitly reaffirmed its holding in *Flaherty* when it expressly rejected the candidate's argument that the

8

impact of such a ruling on a candidate for collecting signatures for nomination papers for a national election was onerous or unduly burdened ballot access in violation of the federal Voting Rights Act, 52 U.S.C. §§ 10101-10702, formerly set forth at 42 U.S.C. § 1971 (Voting Rights Act).[9] In so doing, our Supreme Court in *Nader* observed that *Flaherty* did "not concern the right of an individual to vote. Rather[, it] explain[s] the steps that a candidate must take in order to be properly placed on a ballot." *Nader*, 858 A.2d at 1183. For that reason, the Supreme Court rejected the argument in *Nader* that application of *Flaherty* violated the Voting Rights Act.

In *Vodvarka*,[10] the Court, speaking through then-Judge Leavitt,[11] noted that, "[i]n the past, a signature was not necessarily stricken from a nomination petition where the elector declared a residence on the nomination petition at an address different from that found in the voter registration records." *Vodvarka*, 994 A.2d at 28. Rather, "[t]he discrepancy could lead to a signature strike . . . if the objector could show that the elector did not live at the residence

---

[9] In support of the argument that the Supreme Court's holding in *Flaherty* functioned to unduly burden ballot access in violation of the Voting Rights Act, *Nader* relied upon the following provision of the Voting Rights Act:

> No person acting under color of law shall deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election . . . .

42 U.S.C. § 1971(a)(2)(B).

[10] The parties are quite familiar with this Court's decision in *Vodvarka*, because it involved Objector's challenge to Candidate's nomination petition for this same office six years ago.

[11] Judge Leavitt assumed the role of President Judge on January 4, 2016.

9

declared on the petition or that the declared residence was not located in the district." *Id.* The law changed, however, with our Supreme Court's ruling in *Flaherty* that "*absent extraordinary circumstances*, electors who declare a residence at an address different than the address listed on their voter registration card are not qualified electors at the time they sign a nomination petition unless they have completed the removal notice required by the [PVRA]." *Id.* at 28 (quoting *Flaherty*, 770 A.2d at 333 (emphasis added)). The Court summarized the holding in *Flaherty* as requiring that "a signature from an elector whose declared residence on the nomination petition differs from that on the voter registration records must be stricken, unless the elector has completed a removal notice." *Id.*

The Court then examined the statutory provisions regarding the removal notice referenced in *Flaherty*, observing that Section 1501(b)(2) of the PVRA,[12] 25 Pa. C.S. § 1501(b)(2),

---

[12] Section 1501(b)(2) of the PVRA, which became effective March 18, 2002, provides:

(b) Use.--A registered elector who removes residence from one place to another within the same county must notify the commission by filing a removal notice under subsection (a) or a signed request for renewal that contains the information required in subsection (a) with the commission not later than the registration deadline before an election. . . . The following apply:

. . . .

(2) A registered elector who removes residence from one place to another within the same county and who has not yet filed a removal notice with the commission shall be permitted to vote once at the elector's former polling place following removal if, at the time of signing the voter's certificate, the elector files with the judge of election a signed removal notice properly filled out. . . . A registered elector may vote in the election district of the elector's former residence not more than one time following the elector's removal.

10

> permits an elector who has moved to a new residence in the same county, but not yet filed a removal notice, to vote *once* at the elector's *former* polling place. To vote, the elector must file the removal notice with the judge of election when he appears to vote at his former polling place.

*Vodvarka*, 994 A.2d at 28-29. The Court also noted that the PVRA also provides procedures for striking names from the voter registration records to 'protect the integrity of the electoral process and to ensure the maintenance of accurate and current registration records'" and requires the Secretary of State to "establish a program to identify electors who have moved and notify those electors that their addresses will be changed on the registration records." *Id.* at 29 (quoting 25 Pa. C.S. § 1901(a), (b)). County registration commissions are required to identify electors who do not reside "at the registered address," but the commissions will not remove an elector "from the voter registration rolls until the county commission follows the procedures in Section 1901(d) [of the PVRA] for culling the voter registration records." *Id.*

The candidate in *Vodvarka* argued that "until an elector's name is removed from the county voter registration records in accordance with the procedures set forth in Section 1901 [of the PVRA, 25 Pa. C.S. § 1901], that elector remains a qualified elector and authorized to sign a nomination petition, so long as he continues to reside in the same county." *Id.* The Court, noting that "the 2002 codification of the PVRA did not effect a substantive change to the pre-codified version of the statute in effect at the time *Flaherty* was decided" and that this "Court is bound by the holdings of our Supreme Court, and those holdings cannot be reconciled with [the c]andidate's argument," concluded that a definitive rule was established in *Nader*. *Id.* at 30. The Court wrote:

11

Decided after the 2002 codification of the Voter Registration Act, *Nader* reaffirmed the principle announced in *Flaherty* that "absent extraordinary circumstances" a signature that declares a residence on the nomination petition that is different from that declared on the registration card must be stricken. The Supreme Court rejected the argument that this rule is overly burdensome to a candidate.

Central to the holding in *Flaherty* and in *Nader* is that an elector who declares residence "at an address different than the address listed on [his] voter registration card" is not a qualified elector unless he has first completed the removal notice. *Flaherty*, 770 A.2d at 333. [The c]andidate discounts the need for a removal notice, arguing that so long as an elector has not been stricken from the registration rolls in accordance with Section 1901(d) [of the Voter Registration Act], he is a qualified elector. [The c]andidate gives no weight to Section 1501(b)(2), which forbids an elector from voting at his former polling place until he has first executed a removal notice and delivered it to the judge of elections. 25 Pa. C.S. § 1501(b)(2) [of the Voter Registration Act]. Stated otherwise, in [the c]andidate's view, Section 1901(d) eviscerates Section 1501(b)(2) of the Voter Registration Act.

*Id.* (footnote omitted).

The Court noted and rejected the Third Circuit's decision in *Welker*, which concluded that Section 1901(d) of the PVRA and former Section 901 of the PVRA (now Section 1501(b)(2) of the PVRA) conflicted with each other, and held that Section 1901(d) trumped Section 1501(b)(2). Under *Welker*, "an elector who has not been removed from the voter registration rolls can vote indefinitely at his former polling place without executing the removal notice." *Vodvarka*, 994 A.2d at 31. The Court advanced several reasons for rejecting *Welker*:

There are several reasons why the Court rejects the analysis in *Welker*. First, after *Welker* was decided, the legislature plainly, and unequivocally, limited the elector to one vote at his former polling place. 25 Pa. C.S.

12

§ 1501(b)(2). Further, the elector cannot cast that single vote until he completes the removal notice. Second, the Third Circuit's construction could lead to confusion in that two persons with different names could claim to reside at the same address. From confusion, it is a short step to election fraud, which the procedures in Section 1901 [of the PVRA] are designed to prevent. Third, our Supreme Court, which has the final word on the meaning of the [PVRA], has held twice, in *Flaherty* and in *Nader*, that absent extraordinary circumstances, an elector who has moved and not filled out the removal notice is not a qualified elector, and, thus, cannot sign a nomination petition, let alone vote.

In sum, the [PVRA] establishes more than one mechanism for correcting the address of an elector who moves within the county. The correction may be initiated by the Department of State or the county election commission in accordance with the procedures in Section 1901. The correction may be initiated by the elector who completes a removal notice either before the election or when he votes at his former polling place. Nothing, however, relieves the elector of the burden of executing a removal notice in accordance with 25 Pa. C.S. § 1501(b)(2) if he attempts to vote at his former polling place.

*Id.* at 31.

The Court rejected the candidate's contention that where the residence declared on the nomination petition does not match the address in the voter registration record a candidate may rehabilitate a signature by merely "persuading the Court that there is a person with similar or identical handwriting who has not been removed from the voter registration rolls[,]" because it would require speculation, rather than evidence, that the elector "(1) had just moved when he signed the nomination petition; (2) intends to vote in the next election at his former polling place; and (3) will execute the removal notice at that time and place." *Id.* Rather, the Court in *Vodvarka* concluded that where the objector makes a *prima*

13

*facia* case that a signature is invalid by establishing that the residence declared on the nomination petition does not match the address in the voter registration record, "it is the candidate's burden to prove the extraordinary circumstances referred to by our Supreme Court in *Flaherty*." *Id.* Extraordinary circumstances could include "the fact that the elector has recently moved and intends to execute the removal notice at the old polling place at the next election" or that "[t]he elector may be living temporarily at the residence shown on the nomination petition because the residence listed at the address shown in the registration system has just burned down." *Id.* at 32. Other circumstances could also be considered extraordinary, "[h]owever, a failure to complete a removal notice well over a year after a move cannot, in itself, be considered an extraordinary circumstance." *Id.*

Two years later, this Court in *In re Robertson* (Pa. Cmwlth., No. 507 M.D. 2012, filed September 20, 2012)[13] (an unreported memorandum opinion by a three-judge panel), *rev'd in part on other grounds*, 55 A.3d 1044 (Pa. 2012) (per curiam), considered the issue of "whether a signature of a registered voter whose name appears as an eligible voter in the SURE system's registration records is invalid solely because the address at which the voter is registered is different from the address within the same county that the voter wrote the [n]omination [p]apers."[14] *Robertson*, slip op. at 13. The Court concluded "that because such

---

[13] *Robertson*, as an unreported panel decision of this Court, has persuasive value, but it does not constitute binding precedent. IOP 414(a), 210 Pa. Code § 69.414(a).

[14] The parties in *Robertson* were directed to brief several issues, including "[w]hether the National Voter Registration Act of 1993, 42 U.S.C. § 1973gg-6, and cases decided thereunder require that registered voters may sign federal nomination papers for candidates for federal office using an address that does not match the voters' addresses in the registration records," and "[w]hether arguments related to the National Voter Registration Act of 1993, 42 U.S.C. **(Footnote continued on next page…)**

14

voters are, under the laws applicable to these [n]omination [p]apers, registered voters eligible to vote in the November 2012 election, the mere fact that the address does not match does not invalidate the signature." *Id.*

The Court in *Robertson* observed that the Supreme Court in *Flaherty* "made clear that the sole basis for the invalidity of the signatures was that the address discrepancy, absent a showing of extraordinary circumstances, prevented the signer from being a registered voter eligible to vote in the election at issue." *Id.* at 15. The Court in *Robertson,* relying heavily on the Third Circuit's decision in *Welker* (which the Court found unpersuasive in *Vodvarka*), differentiated the circumstances in the matter before it in *Robertson* from those in *Flaherty*, as follows:

> The voter registration laws applicable to this election are substantially different from the voter registration law provisions on which *Flaherty* was based. Unlike the state election at issue in *Flaherty*, elections for federal office are subject to the requirements of the National Voter Registration Act . . . (NVRA), 42 U.S.C. § 1973gg-6 [(now located at 52 U.S.C. § 20507)]. The NVRA expressly prohibits states from disqualifying voters merely because they moved within the county without updating their address with the board of elections, and requires that such voters be permitted to vote at their prior polling place without changing their registration address in advance of the election. 42 U.S.C. § 1973gg-6(e);[15] *Welker v. Clarke*, 239 F.3d 596,

---

**(continued…)**

§ 1973gg-6, apply to address the validity of signatures in support of non-federal state candidates[.]" *Robertson*, slip op. at 4-5.

[15] Section 1973gg-6(e) [of the NVRA] provides that:

**(Footnote continued on next page…)**

598-99 (3d Cir. 2001). The NVRA also expressly prohibits states from terminating voters' registrations and removing voters from the rolls for federal elections simply because the voter has moved within the county without changing his or her address. 42 U.S.C. § 1973gg-6(d), (f);[16] *Welker*, 239 F.3d at 598-99. Voters can be removed from the rolls based on a change of address within the same county *only* if the voter is first given notice and both fails to respond to the notice and

---

**(continued…)**

(2)(A) *A registrant who has moved from an address in the area covered by one polling place to an address in an area covered by a second polling place* within the same registrar's jurisdiction and the same congressional district and who has *failed to notify the registrar of the change of address prior to the date of an election*, at the option of the registrant—

(i) *shall be permitted to correct the voting records and vote at the registrant's former polling place*, upon oral or written affirmation by the registrant of the new address before an election official at that polling place.

42 U.S.C. § 1973gg-6(e) (emphasis added [in *Robertson*]).

[16] Section 1973gg-6(d) [of the NVRA] provides that:

(1) *A State shall not remove the name of a registrant from the official list of eligible voters in elections for Federal office on the ground that the registrant has changed residence unless the registrant--*

(A) confirms in writing that the registrant has changed residence to a place outside the registrar's jurisdiction [the county] in which the registrant is registered; or

(B)(i) *has failed to respond to a notice* described in paragraph (2); *and*

(ii) *has not voted or appeared to vote (and, if necessary, correct the registrar's record of the registrant's address) in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice*.

42 U.S.C. § 1973gg-6(d) (emphasis added [to *Robertson*])[(alteration in *Robertson*)].

16

fails to vote in at least two federal general elections. 42 U.S.C. § 1973gg-6(d).

*Id.* at 15-16 (emphasis added) (footnotes in original but renumbered here). The Court then quoted the following passage from *Welker*:

> One of the NVRA's central purposes was . . . to ensure that, once registered, voters could not be removed from the registration rolls . . . because they had changed addresses. To achieve this purpose, the NVRA strictly limited removal of voters based on change of address . . . . The NVRA went even further by also requiring the implementation of 'fail-safe' voting procedures to ensure voters would not be removed from registration rolls due to . . . the voter's own failure to re-register at a new address.

*Robertson*, slip op. at 17 (quoting *Welker*, 239 F.3d at 598-99 (citations omitted)). Based upon this reasoning, the Court in *Robertson* concluded that "[a] registered voter who has moved within the same county without changing his address is therefore *legally eligible to vote in federal elections* under the NVRA." *Id.* (emphasis added).

The Court in *Robertson* noted that federal election law preempts state election laws, *see Kuznik v. Westmoreland County Board of Commissioners*, 902 A.2d 476, 495-504 (Pa. 2006), and that federal courts had declared the restriction

> in *Flaherty* that '[g]enerally, voters who move within a county are not allowed to vote on the day of election unless they have re-registered or filed a removal notice with the registrar regarding the change thirty days before the election,' was . . . in violation of the NVRA and invalid for federal elections.

*Robertson*, slip op. at 17-18 (quoting *ACORN v. Ridge*, Nos. 94-CV-382, 95-CV-382 (E.D. Pa. Mar. 30, 1995), slip op. at 5, 9; citing *Welker*, 239 F.3d at 599). The

17

Court then stated "[w]here, as here, a federal court has entered a judgment that a specific provision of our election laws is illegal under federal law, our Court, as a matter of comity, must follow that federal ruling." *Id.* at 18 (citing *In re Stevenson*, 40 A.3d 1212, 1222-26 (Pa. 2012)). The Court then held:

> Because signers of the [n]omination [p]apers who are registered to vote at a different address from their current residence within the same county are therefore registered, enrolled voters legally entitled to vote in the November federal elections, they are 'qualified electors' with respect to the federal [c]andidates and the non-matching address does not invalidate their signatures.

*Id.*

The Court then extended the holding to elections for state candidates when it opined:

> While the NVRA applies only to federal elections, the result is the same with respect to state candidates. In 2002, after *Flaherty* was decided, the General Assembly repealed the statute on which *Flaherty* was based and enacted a new Voter Registration Act (the 2002 Act [or PVRA]), 25 Pa. C.S. §§ 1101-3302. Under the 2002 Act, a voter who has moved within the same county is entitled to vote in one election at his old polling place, regardless of when he moved. 25 Pa. C.S. § 1501(b)(2). In addition, the 2002 Act provides that a voter's registration cannot be canceled simply because the voter moved without changing his registration address, and a voter cannot be removed from the rolls based on a move within the same county unless the specific requirements of the NVRA are met (failure to respond [to] notice and failure to vote in two federal elections). 25 Pa. C.S. § 1901(a), (d). Thus, Pennsylvania's current voter registration laws are substantially different from the automatic termination of registration and termination of eligibility on which *Flaherty* was based. The current laws, like the NVRA, treat changes of address within the same county as not impairing the voter's eligibility. Moreover, to the extent that there are differences between the 2002 Act and the

18

NVRA, our Supreme Court made clear in 2006 that Pennsylvania's Election Code provides a unitary election system for federal and state offices and that procedures for *voting* in state elections are to conform to federal requirements in order to prevent separate federal and state voting systems. *Kuznik*, . . . 902 A.2d at 490-92.

Accordingly, under the present Pennsylvania voter registration laws, enacted after *Flaherty*, and under our Supreme Court's more recent admonition to interpret state voting systems to conform to federal law, differences in address within the same county 'do not prevent the signers from voting at their former polling places' and 'have no legal effect on the signers' status as a qualified and registered elector' in state elections. *In re Nomination Petition of Brown*, 846 A.2d 783, 787 (Pa. Cmwlth. 2004). Because such address differences do not alter the signers' status as 'qualified electors,' these non-matching addresses do not invalidate their signatures . . . . *In re Nomination Petition of Payton*, 945 A.2d 279, 286 n.3 (Pa. Cmwlth. . . . ), *aff'd per curiam*, . . . 945 A.2d 162 ([Pa.] 2008) (abrogated in part on other issue by *Stevenson*); *Brown*, 846 A.2d at 787.

*Id.* at 18-20 (emphasis added) (footnote omitted).

Responding to the objector's contention that *Flaherty* and *Nader* required a different outcome, the Court in *Robertson* opined that neither *Flaherty* nor *Nader* disposed of the specific issue before the Court in *Robertson*. Although the NVRA was in effect when *Flaherty* was decided, *Flaherty* did not involve a federal election and the opinion did not consider the NVRA. Moreover, although the Supreme Court in *Nader* and the Commonwealth Court in *In re Nomination Paper of Rogers*, 914 A.2d 457 (Pa. Cmwlth.), *aff'd per curiam*, 907 A.2d 503 (Pa. 2006), applied *Flaherty* to invalidate signatures on nomination papers for federal elections after the 2002 change in Pennsylvania's voter registration statutes, those decisions did not consider "the fact that voters who moved within the county without changing their address were eligible to vote under the NVRA and the 2002

19

Act and whether the basis on which *Flaherty* struck those signatures was permissible under federal law." *Id.* at 21-22. The Court further explained:

> The only federal voter registration law before the Supreme Court in *Nader* was a different statute, 42 U.S.C. § 1971(a)(2)(B), which does not involve the effect of a move within the county on a voter's registration. [*Nader*,] 858 A.2d at 1183. Nowhere in its opinion in *Nader* did the Court discuss the section of the NVRA at issue here, 42 U.S.C. § 1973gg-6, the 2002 Act or the effect of those laws on *Flaherty*. [*Id.*] at 1183-84. Indeed, the argument before the Court in *Nader* was not whether *Flaherty*'s non-matching address rule was valid given the effect of the NVRA and the 2002 Act, but whether 'the impact' of *Flaherty* and other decisions 'on collecting signatures for [n]omination [p]apers for a national election is onerous,' given the large number of signatures required by Section 951 of the Election Code. [*Id.*] at 1183. Moreover, *Nader* is not the last word from our Supreme Court on the effect of federal law on the interpretation and enforcement of Pennsylvania's election laws. Subsequent to *Nader*, our Supreme Court held in *Kuznik* that federal election law must be followed, even where it conflicts with express state constitutional provisions. [*Kuznik*,] 902 A.2d at 495-504. In addition, just this year, our Supreme Court held in *Stevenson* that where a federal court has struck down a provision of our Election Code, that decision is to be followed, rather than our prior rulings. *Stevenson*, 40 A.3d at 1222-26.

> Neither of this Court's single-judge decisions in *Rogers* considered the NVRA at all or the fact that under the 2002 Act, a move without changing registration address does not disqualify a registered voter from voting or terminate his registration. Rather, these decisions simply assumed that the voter registration laws were the same as the law on which *Flaherty* was based and that *Flaherty* was still good law applicable to that election. *Rogers*, 914 A.2d at 465-66 & n.13; [*In re Nomination Papers of Rogers*, 908 A.2d 942, 945 (Pa. Cmwlth. 2006) (abrogated in part by *Stevenson*)].

*Id.* at 22-23.

20

The Court in *Robertson* then rejected the Court's prior reasoning in *Vodvarka* as not persuasive. First, the Court reasoned that *Vodvarka* improperly switched the burden to the candidate to prove validity when a signer moves, rather than the burden staying with the objector to show that a signature is invalid. Second, the Court disagreed:

> that finding a signer with a non-matching address to be an eligible voter would require 'speculation that the elector . . . (1) had just moved when he signed the nomination petition; (2) intends to vote in the next election at his former polling place; and (3) will execute the removal notice at that time and place,'

because those requirements are not relevant under *Robertson*'s analysis of the NVRA and the 2002 Voter Registration Act. *Id.* at 24 (citing *Vodvarka*, 994 A.2d at 31). Furthermore, invalidating a signature based on the possibility that a voter could be removed from the rolls in the future "is inconsistent with the Supreme Court's holding in [*In re*] *Johnson*[, 502 A.2d 142 (Pa. 1985),] that it is the signer's status on the voter registration rolls when a nomination petition is signed and filed that determines the validity of the signature." *Id.* at 24.

The Court in *Robertson*, addressing the concept of comity, wrote:

> Furthermore, the *Vodvarka* [C]ourt based its conclusion on the rejection of the federal court['s] *Welker* decision, which interpreted Pennsylvania's voter registration law to conform to the requirements of the NVRA. *Vodvarka*, 994 A.2d at 30-31. While the [C]ourt correctly noted that federal court decisions are ordinarily not binding precedent, we believe that our Supreme Court's decisions in *Kuznik* and *Stevenson* mandate that this Court follow *Welker* and the federal district court ruling in *ACORN v. Ridge* declaring illegal the termination of voter registration for failure to file a change of address.

21

*Id.* The Court in *Robertson* also disagreed with the conclusion in *Vodvarka* that striking the signatures of electors with non-matching addresses prevents or reduces election fraud. *Id.* at 24-29.

Objector, characterizing *Robertson* as against the considerable authority of this Court, counters by asking the Court to adopt the reasoning set forth in Judge Covey's dissent in *Robertson*. Judge Covey's dissent disagreed with the majority's conclusion that federal election law preempts state election law with regard to the issue now before this Court.

Judge Covey's dissent in *Robertson* persuasively rejected the majority's proposition that the federal preemption analysis applied by our Supreme Court in *Kuznik* mandated that we conclude that the requirements of the NVRA preempted the requirements of the PVRA with regard to the requirements for valid signatures on a nomination petition. The *Robertson* dissent noted that *Kuznik* involved the Help America Vote Act (HAVA), 52 U.S.C. §§ 20901-21145;[17] Article VII, Section 6 the Pennsylvania Constitution, relating to the use of voting machines; and Section 1104-A of the Election Code,[18] relating to the installation of electronic voting systems. Our Supreme Court in *Kuznik* concluded that HAVA preempted the state laws, because it found that the state laws were an obstacle to the HAVA goals. Of significance to the *Robertson* dissent was the fact that both statutes in *Kuznik*—the HAVA and the PVRA—"involve the fundamental right to vote." *Robertson* (dissent), slip op. at 3 (citing *Kuznik*, 902 A.2d at 488.) The

---

[17] HAVA's provisions were transferred from 42 U.S.C. §§ 15301-15545 to 52 U.S.C. §§ 20901-21145.

[18] Added by the Act of July 11, 1980, P.L. 600, 25 P.S. § 3031.4(a).

22

*Robertson* dissent noted that *Robertson*, however, did not concern *the right to vote*. Rather, the matter involved solely *the right to sign nomination papers*, and "[r]equiring a signer of a [n]omination [p]aper to validate that he or she is in fact a qualified elector when the address he or she affixes to a [n]omination [p]aper does not match his or her address in the SURE system, in no way effects that individual's *right to vote*." *Id.* (emphasis added). The *Robertson* dissent observed that

> concepts of federalism and state sovereignty make clear that in discerning whether Congress intended to preempt state law, *there is a presumption against preemption*. Specifically, the United States Supreme Court has stated that "it will not be presumed that a federal statute was intended to supersede the exercise of the power of the state unless there is a clear manifestation of intention to do so." Stated another way, a cornerstone of the United States Supreme Court's preemption jurisdiction is that, "[i]n all pre-emption cases, and particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally occupied,' . . . we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'"

*Id.* at 4-5 (alterations in original) (citations omitted) (quoting *Dooner v. DiDonato*, 971 A.2d 1187, 1193 (Pa. 2009)).

The *Robertson* dissent, citing *Orson, Inc. v. Miramax Film Corporation*, 189 F.3d 377, 381 (3d Cir. 1999), and *Dooner*, then examined the three ways in which federal law may preempt state law, which have been described as express preemption, field or implied preemption, and conflict preemption. The dissent opined that

> the NVRA makes absolutely no reference to [n]omination [p]apers or a mechanism of placing an individual's name on an election ballot. Because there is

23

no explicit statutory language in the NVRA indicating that state law is to be displaced, and the NVRA does not expressly preempt the definition of a 'qualified elector' for the purpose of being eligible to sign a [n]omination [p]aper, the state's definition of 'qualified elector' cannot be displaced on the basis of express preemption.

. . . .

[Moreover, t]he NVRA specifically provides: 'notwithstanding any other Federal or State law, *in addition to any other method of voter registration provided for under state law*, each State shall establish procedures to register to vote in elections for Federal office . . . .' 42 U.S.C. § 1973gg-2(a) (emphasis added). Thus, the NVRA was not intended to preempt the PVRA provisions relating to a registered elector or the Election Code regarding a qualified elector for federal elections. In addition, the NVRA makes absolutely no reference to [n]omination [p]apers or a mechanism of placing an individual's name on an election ballot. Because the NVRA did not so thoroughly occupy the field as to leave no room for the states regarding the definition of a 'qualified elector' for the purpose of being eligible to sign a [n]omination [p]aper, there is no field preemption.

. . . .

In the instant case, there is no conflict between the federal law and the state law.

*Id.* at 5-6 (seventh alteration in original).

Focusing on the Election Code's provisions regarding qualified electors,[19] the *Robertson* dissent concluded that no conflict existed between the NVRA and PVRA. The *Robertson* dissent also opined that the majority in *Robertson* improperly focused on removal from the voting roll, when the real issue is whether a registrant is permitted to vote. Both the NVRA and the PVRA permit

---

[19] *See* Sections 102(t) and 951(c) of the Election Code, 25 P.S. §§ 2602(t), 2911(c).

24

a registrant who has moved and not officially changed his address in the voter registration record to vote upon an affirmation of his new address. *See* 52 U.S.C. § 20507(e); Section 1501(b) of the PVRA, 25 Pa. C.S. § 1501(b). Thus, no conflict existed between the two statutes.

The *Robertson* dissent summarized the essence of its position, as follows:

> It is important to be clear that this case does not in any manner concern the removal of a registrant from the voter rolls. The issue is who has the right to sign a [n]omination [p]aper, which is defined as one who has the right to vote. Both federal and state laws mandate that the right to vote has corresponding duties which includes among them the proactive step of ensuring the accuracy of one's residence. Where a registrant has a change of address and he or she has not affirmed or confirmed his or her new residence at the time of election, he or she has chosen not to use his or her right to vote, thus, eliminating his or her status as a qualified elector. An individual who is not qualified to vote in a current election is not qualified to sign a [n]omination [p]aper in that same election.

*Robertson* (dissent), slip op. at 10-11.

We now resolve the conflict between the Court's reported single-judge opinion in *Vodvarka* and our unreported panel decision in *Robertson* in favor of the analysis set forth in *Vodvarka* for two reasons.

First, the *Robertson* dissent sets forth a well-reasoned analysis establishing that *Robertson*'s reliance on *Kuznik*, in particular, and the concept preemption, in general, to preempt the Supreme Court's holding in *Flaherty* is

misplaced.[20]  Thus, we conclude that the Supreme Court's analysis in *Flaherty* is not preempted by federal law.

Second, while the majority decision in *Robertson* is thoughtful, it digresses from the clear and explicit holdings of our Supreme Court in *Flaherty*, which the Supreme Court reaffirmed in *Nader* and continues to reaffirm, that "absent extraordinary circumstances, electors who declare a residence at an address different than the address listed on their voter registration card are not qualified electors at the time they sign a nomination petition unless they have completed the removal notice required by the [PVRA]." *Flaherty*, 770 A.2d at 333.  We are mindful that our Supreme Court has steadfastly continued to apply the holding in *Flaherty* over the many years.  As recently as 2012, the Supreme Court again cited *Flaherty* in *In re Nomination Petition of Gales*, 54 A.3d 855 (Pa. 2012), and in *In re Lunny* 44 A.3d 1 (Pa. 2012) (per curiam), *rev'g In re Nomination Petition of Lunny* (Pa. Cmwlth., No. 170 M.D. 2012, filed April 5, 2012).[21]  Moreover, our

---

[20] Similarly, *Robertson*'s reliance upon the Supreme Court's 2012 opinion in *Stevenson* is also misplaced, as *Stevenson* involved provisions of the Election Code imposing *district residency requirements for those collecting signatures on nomination papers*.

[21] In *In re Nomination Petition of Lunny* (Pa. Cmwlth., No. 170 M.D. 2012, filed April 5, 2012) (Pellegrini, P.J.), *rev'd*, 44 A.3d 1 (Pa. 2012) (per curiam), then-President Judge Pellegrini, rather than applying the reasoning set forth in *Flaherty* and *Nader*, declined to strike two signatures of electors who were registered in the voting district but listed different addresses within the voting district on the nomination petition than their addresses contained in the SURE system.  In deciding not to strike the signatures, the Court specifically noted that there was no dispute that the actual signatures were valid—*i.e.*, that the signatures matched the signatures of the electors in the SURE system—and determined that the deviations in the addresses were *de minimus*.  On appeal, however, the Supreme Court reversed, expressly relying on its holdings in *Flaherty* and *Nader*.  The Court recognizes that the Supreme Court's per curiam order in *Lunny* is not binding, *see Commonwealth v. Tilghman*, 673 A.2d 898, 904 (Pa. 1996), but we nevertheless find the reasoning in the order persuasive and indicative of the Supreme Court's continued adherence to *Flaherty* and *Nader*.

Court acknowledged the Supreme Court's holding in *Lunny* in *In re Nomination Petition of Sweeney* (Pa. Cmwlth., No. 423 M.D. 2014, filed September 4, 2014) (Leadbetter, J.),[22] and on numerous instances since then our Court has followed the reasoning of *Sweeney* and applied the analysis set forth in *Vodvarka*.[23]

In light of the Supreme Court's continued adherence to *Flaherty* and *Nader* and in the absence of clear federal preemption, it is for our Supreme Court to overrule that line of cases. Until the Supreme Court does so, we will continue to apply those cases as the Court did in *Vodvarka* and the many cases applying *Vodvarka*. As such, we reiterate the presumption that a signature on a nomination petition is valid, and an objector has the burden of proving defects in a nomination petition. An objector may prove a defect by showing that an individual's address on the petition does not match the address in the voter registration records. At that point, the burden shifts to the candidate to produce evidence to show why the signature should not be stricken—*i.e.*, that extraordinary circumstances existed.

---

[22] In *Sweeney*, our Court wrote:

> As the *Robertson* court recognized, the current statutory provisions treat changes of address within the same county as not impairing the voter's eligibility to vote and, thus, not impairing the voter's status as a qualified elector. [*Robertson*], slip op. at 18-20. However, the persuasive analysis in *Robertson* cannot overcome the binding effect of the Supreme Court's recent ruling in [*Lunny*].

*Sweeney*, slip op. at 5. We acknowledge that *Sweeney* does not constitute binding precedent on this Court. *See* IOP 414(b), (d), 210 Pa. Code § 69.414(b), (d).

[23] Recently, this Court has applied the burden-shifting analysis set forth in *Vodvarka*. *See In re Nomination Petition of Eichenlaub* (Pa. Cmwlth., No. 98 M.D. 2016, filed March 22, 2016) (Wojcik, J.); *In re Nomination Petition of Walker-Montgomery* (120 M.D. 2016, filed March 17, 2016) (Wojcik, J.); *In re Nomination Petition of Singer* (Pa. Cmwlth., No. 514 C.D. 2015, filed April 23, 2015) (Cohn Jubelirer, J.); *In re Nomination Petition of White* (Pa. Cmwlth., No. 446 C.D. 2015, filed April 17, 2015) (Cohn Jubelirer, J.); and *In re Nomination Petitions of Warner* (Pa. Cmwlth., No. 163 M.D. 2014, filed April 2, 2014) (Pellegrini, P.J.).

*Vodvarka*, 994 A.2d at 31-32. Because the candidate is in a better position to make this showing given that the candidate (or his supporters) obtained the signatures, it is reasonable for the candidate to bear this burden. Accordingly, the Court strikes the 461 signatures that are the subject of Objector's NRA challenges.

Next, we consider whether an elector's signature may be stricken from a nomination petition when the elector uses the address set forth in his voter registration record instead of setting forth his street address and *municipality*. By way of explanation, the nomination petition contains columns with four headings: (1) signature of elector, (2) printed name of elector, (3) *place of residence*, and (4) date of signing. The place of residence column is further divided into three more specific columns: (a) house number, (b) street or road, and (c) city, borough or township. Underneath the rows are columns where a signer writes the requested information. Column 3(c)—city, borough, or township—is the subject of dispute. Objector characterizes column 3(c) as requiring a signer to list his "municipality." We observe, however, that the nomination petition does not include a column expressly requesting a signer to list his "municipality." Moreover, we note that mailing addresses usually contain a house number, street or road, and the name of a nearby city or town. The city or town included in the mailing addresses does not always match the legal name of the municipality where the residences are located.

Here, Objector argues that the MUN entries on Candidate's nomination petition must be stricken, because the signers did not set forth their proper municipality—*i.e.*, their physical address. Instead, they used addresses which matched addresses set forth in their voter registration records—*i.e.*, their mailing address. Objector appears to reason that under *Flaherty* and its progeny, where a signer's address on the nomination petition does not match the address for

28

the municipality identified in the voter registration records, a *prima facie* case is made that the entry must be stricken in the absence of rehabilitative evidence. Objector maintains that the MUN entries contain a fundamental address error—"the *municipality* listed in each of those entries does not match the *municipality* of the signer in the SURE system." (Objector's Br. at 17 (emphasis added).)

Candidate argues that this issue was addressed and squarely rejected by the Court in *Creighton*, when our Court considered whether an entry on the candidate's nomination papers should be stricken where the signer wrote his mailing address in the space for "City, Boro or Twp.," rather than his township, and rejected the notion that a signer was required to list his municipality in order for his signature to be valid. *Creighton*, 899 A.2d at 1167.

Noting that the candidate had offered evidence that the addresses on the nomination papers were the signers' mailing addresses, the Court in *Creighton* held that when signing a nomination petition, an elector may use either his "mailing address or the municipality of the elector's election district in the space on the petition marked 'City, Boro or Twp.'" *Id.* at 1170. The Court explained more fully as follows:

> Under *Nader* and *Flaherty*, absent extraordinary circumstances, Section 908 of the Election Code requires that the elector's address must conform with the elector's address as it appears on the voting registration card. Neither *Nader* nor *Flaherty* dealt with the specific issue here of whether an elector's signature should be stricken when the elector uses his or her mailing address rather than the municipality in which he or she resides.
>
> Whether a mailing address is a defect at all depends on what the Election Code requires. Section 704 of the Election Code, 25 P.S. § 2814, sets forth the rules for determining an elector's residence. It provides that a person desiring to register to vote must do so for that place where the person's habitation is fixed, and to

29

which, whenever he or she is absent, he or she has the intention of returning. 25 P.S. § 2814(a). The term "election district" is defined in the Election Code as "a district, division or precinct, established in accordance with the provisions of this act, within which all qualified electors vote at one polling place." Section 102 of the Election Code, 25 P.S. § 2602.

In addition, Section 1102 of what is commonly referred to as the Pennsylvania Voter Registration Act, 25 Pa. C.S. § 1102, identifies information that must appear on a voter registration card. It requires, *inter alia*, the "ward and election district of residence" and the "registrant's street address." 25 Pa. C.S. § 1102. This Court construes "street address" to signify the voter's mailing address. The record shows that the elector's mailing address and the elector's election district are both included on the elector's voter registration card. Accordingly, when an elector signs a nomination petition, the elector may use either his or her mailing address or the municipality of the elector's election district in the space on the petition marked "City, Boro or Twp." This is consistent, also, with our Supreme Court's holding in *Flaherty* and *Nader* that the address used on a nomination petition must match the address shown on the voter registration card.

Objectors do not claim that any of the signatures in question are unauthentic; that the street address is inaccurate; that any of the signers live at an address other than the one listed; or that they are not duly registered voters or electors in the 37th Legislative District. As a result, the . . . challenges . . . fail.

*Creighton*, 899 A.2d at 1169-70 (footnotes omitted).

Objector argues that *Creighton* is not contrary to his position, because Candidate has not offered any evidence that the MUN entries reflect the *mailing addresses* for those signers. Rather, Objector maintains that the parties have merely stipulated that those entries

contain a name, signature, and street address matching that of an individual registered to vote in the county

30

> reflected on the Petition page containing the entry, but the place set forth in the "City, Boro or Twp." section of the entry does not match the political subdivision on record in the SURE system for the individual of that name and street address.

(Stip. ¶ 6.) Because there is no record evidence that the MUN entries reflect the *mailing addresses* of the signers, Objector contends that the factual prerequisite for the rationale employed by the Court in *Creighton* is absent here and the MUN entries should be stricken.

Objector's argument is specious, as it attempts to mischaracterize the nature of the information set forth in the voter registration record and obscures the basis for the Court's opinion in *Creighton*. Objector implies that the address set forth in the voter registration record is not necessarily the "mailing address" of the elector referred to in *Creighton*, but perhaps may be some *other* type of address. Objector also appears to imply that, under *Creighton*, a candidate must establish that the address on the nomination petition is the *actual* mailing address, not that it is the address set forth in the voter registration record. Under Objector's argument, when the information in the "City, Boro or Twp." column does not match the municipality listed in the voter registration record, absent rehabilitative evidence that the address in the voter registration record is, in fact, the signer's mailing address, it is irrelevant if the address on the nomination petition matches the address in the voter registration record. Instead, the voter must present evidence that the address in the voter registration record is also the mailing address used by the signer.

Objector clearly misapprehends *Creighton*. Section 704 of the Election Code, to which the Court referred in *Creighton*, sets forth the rules for determining an elector's "residence," not an elector's mailing address.

31

Section 1102 of the Voter Registration Act, to which the Court also referred to in *Creighton*, identifies information that must appear on a voter registration card, including the "ward and election district of residence" and the "registrant's street address." Section 1102 does not require that the registrant provide a "mailing address" for inclusion on the voter registration card, and we do not believe that the General Assembly intended the "registrant's street address" to be anything other than the street address for the registrant's residence, which usually functions as a mailing address. Moreover, the Court in *Creighton* construed "'street address to signify the voter's mailing address." *Creighton*, 899 A.2d at 1170. Thus, Objector's contention that the Court in *Creighton*, when it referred to a signer's "mailing address," somehow was referring to something other than the street address as set forth in the voter registration record lacks merit. To conclude otherwise would render the "street address" in the voter registration record meaningless.[24] Thus, we reject Objector's interpretation of *Creighton*.

We agree with Candidate that *Creighton* squarely addressed this issue, and Objector has not presented any compelling reason to alter, let alone abandon, the analysis set forth in *Creighton*, particularly where the relevant statutory provisions require registrants to provide a "registrant's street address" and "ward and election district of residence" for inclusion on the voter registration card, *see* Section 1102 of the Voter Registration Act, and the nomination petition does not contain language expressly requiring that a signer set forth his municipality.

_____

[24] Objector's interpretation would also create an unworkable framework where a candidate, when a signer failed to list his municipality on the nomination petition, would need to bring in extrinsic evidence that the signer uses the address set forth on the nomination petition (which matches the street address in the voter registration record) to receive mail.

32

Although the significance of *Flaherty* and *Nader* as recounted in *Creighton* may be diminished in light of our discussion above with respect to the NRA issue, the statutory analysis in *Creighton* remains solid.[25]

For these reasons, we reject Objector's challenges to the MUN entries and reiterate our earlier holding in *Creighton* that "when an elector signs a nomination petition, the elector may use either his or her mailing address or the municipality of the elector's election district in the space on the petition marked 'City, Boro or Twp.'" *Creighton*, 899 A.2d at 1170.

Accordingly, because the Court strikes the signatures that were challenged based upon the signers being "not registered at the address" contained on the nomination petition, we grant Objector's petition to set aside Candidate's nomination petition.

_____<br>
P. KEVIN BROBSON, Judge

---

[25] In support of his argument, Objector also cites *In re Nomination Petition of White* (Pa. Cmwlth., No. 446 C.D. 2015, filed April 17, 2015) (Cohn Jubelirer, J.), an unreported single-judge opinion, wherein a signer mistakenly wrote an incorrect house number on the nomination petition and the Court allowed the candidate to meet his burden to prove "extraordinary circumstances" by producing evidence showing that the signer had made a mistake. Objector points out that the Court in *White* did not conclude that the error in the house number was *de minimis* and could or should be overlooked. Objector seems to suggest that this is akin to the situation now before the Court, because the municipality is listed incorrectly. *White*, however, in no way supports Objector's argument.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Nomination Petition of Joseph : \
Vodvarka as a Candidate of the : \
Democratic Party for the : \
United States Senate in the :      No. 126 M.D. 2016 \
Primary Election of April 26, 2016 : \
         : \
Petition of: Joseph A. Sestak, Jr. :

# **O R D E R**

NOW, this 30th day of March, 2016, upon consideration of the Petition of Joseph A. Sestak, Jr. (Objector) to Set Aside the Nomination Petition of Joseph Vodvarka as a Candidate (Candidate) of the Democratic Party for the United States Senate, it is hereby ordered:

1. With regard to Objector's "Not Registered at Address" challenges to 461 signatures based upon a contention that the signatures should be stricken because the entries contain a name and signature matching that of a person registered to vote in the county reflected on the nomination petition page containing the entry, but the address provided in the entry does not match the address on record in the Statewide Uniform Registry of Electors (SURE) system for the individual of that name, the Court concludes that the signatures shall be STRICKEN.

2. With regard to Objector's "Municipality" challenges to 220 signatures based upon a contention that the signatures should be stricken because the signatures contain a name, signature, and street address matching that of an individual registered to vote in the county reflected on the nomination petition page containing the entry, but the place set forth in

3. the "City, Boro or Twp." section of the entry does not match the political subdivision on record in the SURE system for the individual of that name and street address," the Court concludes that the signatures are VALID.

4. As a result of the above rulings, the Petition to Set Aside the Nomination Petition of Joseph Vodvarka is GRANTED, because Candidate's nomination petition now contains less than the requisite number of valid signatures required for his name to be on the ballot as Candidate for the Democratic Party for the Unites States Senate.

5. The Secretary of the Commonwealth is directed to REMOVE the name of Joseph Vodvarka as Candidate of the Democratic Party for the United States Senate from the ballot for the Democratic Primary on April 26, 2016.

6. The Chief Clerk shall notify the parties hereto and their counsel of this order and also certify a copy hereof to the Secretary of the Commonwealth.

P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Nomination Petition of Joseph : 
Vodvarka as a Candidate of the : 
Democratic Party for the United : 
States Senate in the Primary Election : 
of April 26, 2016 : No. 126 M.D. 2016
 : 
Petition of: Joseph A. Sestak, Jr. : Submitted: March 18, 2016


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                   HONORABLE RENÉE COHN JUBELIRER, Judge
                   HONORABLE ROBERT SIMPSON, Judge
                   HONORABLE P. KEVIN BROBSON, Judge
                   HONORABLE PATRICIA A. McCULLOUGH, Judge
                   HONORABLE ANNE E. COVEY, Judge
                   HONORABLE MICHAEL H. WOJCIK, Judge


**DISSENTING OPINION**
**BY JUDGE COHN JUBELIRER**                    **FILED:  March 30, 2016**


I, respectfully, disagree that the ability to nominate a candidate of one's choice, which requires the signing of a nomination petition, does not implicate an individual's constitutionally protected right to vote. "There is more to the right to vote than the right to mark a piece of paper and drop it in a box or the right to pull a lever in a voting booth," or in modern times, to check a box on a voting machine. South v. Peters, 339 U.S. 276, 279 (1950) (Douglas J., dissenting). State laws concerning the eligibility of candidates "inevitably affects—at least to some degree—the individual's right to vote and his right to associate with others for political ends." Anderson v. Celebrezze, 460 U.S. 780, 788 (1983). While

individuals are always free to write-in a candidate of their choosing on election day, this country's two-party political system is designed in such a way that degrading the ability of citizens to nominate a candidate of their choosing for the political party for which they are a member effectively diminishes their right to vote. Without the ability to nominate a candidate, the right to vote can become a meaningless affirmation of a choice made by others. I, therefore, believe that the protections of the federal laws which protect the right to vote must also apply to the ability to nominate individuals for whom the right to vote can be exercised. Because I believe, with the advent of the SURE system, that a different balance could protect against fraud in the electoral process without disenfranchising otherwise qualified electors, I must respectfully dissent to the Majority's well-written and thorough opinion.

Section 908 of the Election Code requires all signers of nomination petitions to "add his residence, giving city, borough or township, with street and number, if any . . . ." 25 P.S. § 2868. Applying this provision of the Election Code has challenged the courts. The courts must, on the one hand, vigilantly protect the franchise and remain cognizant that "any restrictions" on "[t]he right to vote freely for the candidate of one's choice . . . strike at the heart of representative government." Reynolds v. Sims, 377 U.S. 533, 555 (1964). On the other hand, the courts must be ever-mindful that the Commonwealth "has an interest, if not a duty, to protect the integrity of its political processes . . ." Bullock v. Carter, 405 U.S. 134, 145 (1972). Accordingly, the courts of this Commonwealth have long been entrusted to balance these dual objectives by both construing the Election Code liberally "so as not to deprive an individual of his right to run for office, or the

2 - RCJ

voters of their right to elect a candidate of their choice," Nomination Petition of Ross, 190 A.2d 719, 720 (Pa. 1963), and by "protect[ing] the Commonwealth's compelling interest in preserving the integrity of the election process." In re Nomination Papers of Carlson, 430 A.2d 1210, 1212 (Pa. Cmwlth. 1981) (Crumlish, J., single judge op.).

In In re Nomination of Flaherty, 770 A.2d 327 (Pa. 2001), our Supreme Court was confronted with balancing these dual interests when it addressed a nomination petition of a candidate seeking to be placed on the ballot for judge on this Court. The nomination petition at issue included 16 signatures of electors that listed addresses that did not match the addresses stated on the voters' respective voter registration cards. The Court looked to the Voter Registration Act in effect at the time, which provided that voters who moved within the county *could not vote* in elections unless they notified the authorities of their new address no later than 30 days preceding an election,[1] and held that "absent extraordinary circumstances, electors who declare a residence at an address different than the address listed on their voter registration card are not qualified electors at the time they sign a nomination petition unless they have completed the removal notice required by the Voter Registration Act." Flaherty, 770 A.2d at 333.

More recently, this Court has employed a more forgiving interpretation of the Election Code in the context of federal elections. See, e.g., In re Nomination

---

[1] 25 Pa. C.S. §§ 961.901-961.902, repealed by the Act of January 31, 2002, P.L. 18, No. 3, § 5(2).

Papers of Robertson (Pa. Cmwlth. No. 507 M.D. 2012, filed September 20, 2012), slip op. at 13.[2] Because Flaherty addressed only state elections and relied on the text of a Voter Registration Act that had been repealed, the Court looked to federal law and held that "the mere fact that the address [listed on a voter registration card] does not match [the address written on the nominating papers] does not invalidate the signature." Robertson, slip op. at 13. According to the Court:

> [T]he Election Code requires only that the signer write his current residence address and does not state that he must write the address at which he is registered or that his present residence must match his registered address. Where the Election Code does not affirmatively require that information on a nomination petition or paper match the voter registration record and the differences does not compromise the integrity of the election process, signatures cannot be stricken based on a difference from the voter registration records.

Robertson, slip op. at 25-26. The Court's reasoning also relied, in no small part, on the fact that the SURE system was created by statute *after* Flaherty was decided. Section 1222 of the Election Code, 25 Pa. C.S. § 1222.[3] The Court noted that

> while voter registration records were once searched *by address* in hard copy volumes, address is no longer essential for searching whether signers are registered voters. . . . The SURE system permits electronic searching by name and permits signatures to be pulled up for comparison from a name search without inputting address information.

---

[2] Pursuant to Section 414 of the Commonwealth Court Internal Operating Procedures, unreported opinions of a panel of the Commonwealth Court, if issued after January 15, 2008, may be cited for "persuasive value, but not as binding precedent." 210 Pa. Code § 69.414(a).

[3] Added by Section 4 the Act of May 16, 2002, P.L 310, No. 44.

Robertson, slip op. at 28 (emphasis added).

Balancing the competing concerns at issue in these cases is complicated. It is not surprising, then, that this Court's jurisprudence has not been entirely consistent on the issue of whether a signature of a person who lists an address different than that on record in the SURE system is valid. Compare In re Payton, 945 A.2d 279, 286 n.3 (Pa. Cmwlth.) review denied, order aff'd, 945 A.2d 162 (Pa. 2008) abrogated on other grounds by In re Stevenson, 40 A.3d 1212 (Pa. 2012) (not striking signature lines that listed their residences with addresses in the district even though the addresses differed from the registration addresses); In re Nomination Petition of Brown, 846 A.2d 783, 787 (Pa. Cmwlth. 2004) (not allowing amendment to addresses listed on a nomination petition because "to do so would be pointless" given that different addresses within the political district had "no legal effect on the signers' status as a qualified and registered elector"); with In re Nomination Petition of Vodvarka, 994 A.2d 25, 30 (Pa. Cmwlth. 2010) (Leavitt, J., single judge op.) (applying Flaherty's "extraordinary circumstances" test); In re Nomination Petition of White (Pa. Cmwlth., No. 446 C.D. 2015, filed April 17, 2015) (Cohn Jubelirer, J., single judge op.), slip op. at 13 (applying Flaherty's "extraordinary circumstances" test and holding that a recent move within a district is an extraordinary circumstance that allows for the introduction of curative evidence).

It appears that the Supreme Court has similarly struggled to provide this Court with consistent guidance on this issue, at least as it concerns federal

elections. In In re Nomination Petition of Gales, 54 A.3d 855, 861 (Pa. 2012), the Supreme Court cited its Flaherty decision favorably in the context of a *state* election primary. The following week, the Supreme Court re-affirmed its holding in Flaherty in In re Lunny, 44 A.3d 1, 2 (Pa. 2012), where it reversed this Court's decision to not strike signatures on a nominating petition for *state* office that listed an address other than the one provided on the voter registration card. However, when the Supreme Court addressed Robertson on appeal six months later, and was confronted with the same issue in the context of a *federal* election, the Court did not comment on this Court's decision to not strike the signatures or disturb Robertson's holding in this regard. In re Robertson, 55 A.3d 1044, 1044-45 (Pa. 2012) (reversing this Court's opinion *only* "to the extent that it ordered that the signatures unaccompanied by a designation of the year of signing must be stricken from the nomination papers").

In the face of this uncertainty, and given that the "overriding policy in this Commonwealth to protect the elective franchise," Petition of Cioppa, 626 A.2d 146, 148 (Pa. 1993), I strongly believe that this Court should, within the bounds of the law, err on the side of *including*, rather than *excluding*, all citizens in the electoral process. I fear that, in its balance of the dual mandates of the Election Code, the Majority's holding will have a deleterious effect on the right to vote of disadvantaged citizens and those not traditionally politically active. Those who rent a residence, do not drive a vehicle, and those who reside in assisted living facilities, student housing, public housing, shelters, and group homes are more likely to reside at an address that differs from the address listed on their voter registration cards. Striking signatures of those who list an in-county address on a

6 - RCJ

nomination petition that differs from the address listed on the SURE system, when the signatures would otherwise be consistent with the voter registration cards, degrades the electoral power of these citizens. And, as Chief Justice Warren stated in the landmark <u>Reynolds v. Sims</u> decision, "[t]o the extent that a citizen's right to vote is debased, he is that much less a citizen." <u>Reynolds,</u> 377 U.S. at 567.

I believe the correct balance, which is supported by the our case law and the purposes of Section 908 of the Election Code, is to follow the approach outlined in <u>Robertson</u> and to not strike a signature where the only defect is that the elector is registered at a different address within the same county than the in-county address written on the nomination petition. Because the fact that an elector moves within the county without immediately updating voter registration information, by itself, does not render the elector unqualified to vote, it should likewise not render the elector unqualified to sign a nomination petition, so long as the signature is consistent with the signature on the registration card. Moreover, not striking such signatures does not violate the integrity of the electoral system as an elector's identity can be confirmed by matching the signature on the SURE system. By using the SURE system, an individual who signs a nomination petition can be searched by first and last name and the individual's identity can be verified by examining the signature found in the system. While listing an address that matches that on an elector's voter registration card may have been integral to prevent fraud in the past, with the advent of the SURE system, this is no longer required. I would, therefore, hold that because Objector has not proffered any defect to the challenge of 461 signature lines other than the fact that the addresses listed do not match the electors' voter registration card, Objector has failed to meet his burden.

7 - RCJ

I agree with the Majority's well-reasoned conclusion that the signatures of the electors that listed their mailing addresses instead of their municipality on the Nomination Petition are valid. The Majority's approach to this issue is consistent with case law and strikes the appropriate balance between protecting the franchise and preventing fraud. However, for the reasons set forth above, I must respectfully dissent from the majority opinion in this case.

_____
**RENÉE COHN JUBELIRER, Judge**

Judge McCullough joins in this dissent.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Nomination Petition of      :
Joseph Vodvarka as a Candidate of the   :
Democratic Party for the United States  : No. 126 M.D. 2016
Senate in the Primary Election of     :
April 26, 2016                  : Submitted:  March 18, 2016
                                 :
Petition of: Joseph A. Sestak, Jr.     :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge


**DISSENTING OPINION**
**BY JUDGE McCULLOUGH**               **FILED:  March 30, 2016**


I join in the well-written and thorough dissenting opinion of Judge Cohn Jubelirer.  Unlike the Majority, I would conclude that a discrepancy between an elector's listed address on a nomination petition and the address indicated in the voter registration record is an amendable defect when:  (1) the elector's signature on the nomination petition matches that of his/her registration card; (2) the elector is a registered voter affiliated with the political party of the candidate; and (3) the address listed on the nomination petition is within the same county and/or political district of the candidate.  In these circumstances, there is no question that the elector's signature is authentic, and the spirit of federal and state statutory voting laws dictate that the discrepancy in address does not render the elector unqualified

to sign a nomination petition and vote for a candidate. I respectfully submit that to hold otherwise would constitute an infringement of one's constitutionally protected right to vote.

I write separately to express the view that our Supreme Court's *per curiam* order in *In re Nomination of Lunny*, 44 A.3d 1 (Pa. 2012), does not compel this Court to reach a result different from that advocated by Judge Cohn Jubelirer in her dissent and the majority panel in *In re Robertson* (Pa. Cmwlth., No. 507 M.D. 2012, filed September 20, 2012)[1] (an unreported memorandum opinion by a three-judge panel).

In *Lunny*, our Supreme Court reversed a single-judge order of this Court and held that we erred in not striking two signature lines on the basis of the electors' addresses not matching the addresses on the respective electors' voter registration cards. In support of this reversal, the Supreme Court cited its previous decisions in *In re: Nomination of Flaherty*, 770 A.2d 327, 333 (Pa. 2001), and *In re Nomination Papers of Nader*, 858 A.2d 1167, 1183 (Pa. 2004) (holding, generally that "absent extraordinary circumstances, an individual who signs a nomination petition that lists an address other than the one provided on his voter registration card is not a qualified elector").

*Flaherty* and *Nader* have been persuasively distinguished by Judge Cohn Jubelirer in her dissent herein and by the majority in *Robertson*. As to *Lunny*, our Supreme Court has previously held that its *per curiam* orders have no *stare decisis* effect, *Commonwealth v. Thompson*, 985 A.2d 928, 937 (Pa. 2009), nor are the orders themselves controlling even when citing to binding authority,

---

[1] *Robertson*, as an unreported panel decision of this Court, has persuasive value, but it does not constitute binding precedent. Internal Operating Procedure 414(a), 210 Pa. Code §69.414(a).

*Commonwealth v. Smith*, 836 A.2d 5, 17 (Pa. 2003). While there is no dispute that a *per curiam* order becomes the law of a particular case, our Supreme Court has held that such an order only has precedential effect when it expressly adopts the reasoning of a lower court opinion. *Commonwealth v. Tilghman*, 673 A.2d 898, 904 (Pa. 1996).

Additionally, the single-judge opinion in *Lunny* did not undertake the extensive analysis set forth in *Robertson*. Indeed, our decision in *Lunny* preceded our decision in *Robertson* by approximately five months. Hence, **neither** our underlying decision nor the Supreme Court's *per curiam* order in *Lunny* **addressed** the effect of the National Voter Registration Act of 1973 (NVRA), 42 U.S.C. §973gg—6, or the potential preemption conflict between the NVRA and/or the Pennsylvania's Voter Registration Act (the 2002 Act), 25 Pa. C.S. §§1101—3302, and the Election Code, Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§2600—3591.

However, in addition to ***Robertson***, these **issues were addressed** in a single-judge decision in *In re: Nomination Petition of Sweeney* (Pa. Cmwlth., No. 423 M.D. 2014, filed September 4, 2014). In that case, the addresses listed for seven signatures on the nomination papers did not match the corresponding addresses on the respective electors' voter registration cards, and Judge Leadbetter noted that all of the addresses were in the relevant senatorial district and that the signatures on the nomination papers appeared to match the signatures on the respective electors' voter registration cards. She went on to explain that:

> The Pennsylvania Election Code requires that nominations by political bodies of candidates for state senate "be made by nomination papers signed by qualified electors . . . of the electoral district for which the nomination is made . . . ." Section 951(a), *as*

*amended*, 25 P.S. § 2911(a). Persons signing such nomination papers are required to declare therein that he or she is a qualified elector of the district and must add to his signature his or her legibly printed name, residence and the date of signing. "Qualified elector" is defined as: "any person who shall possess all of the qualifications for voting now or hereafter prescribed by the Constitution of this Commonwealth, or who, being otherwise qualified by continued residence in his election district, shall obtain such qualifications before the next ensuing election." Section 102(t) of the Election Code, *as amended*, 25 P.S. §2602(t). The Constitution prescribes age, citizenship and residency conditions that qualify one as an elector who shall be entitled to vote "subject, however, to such laws requiring and regulating the registration of electors as the General Assembly may enact." Pa. Const. art 7, §1. This language and the practicality of relying on registration records to determine whether a signer is a qualified elector underpin the established rule that a qualified elector under Section 951 of the Election Code must be a registered voter. *See In re Nomination Paper of Rogers*, 908 A.2d 942, 946-47 (Pa. Cmwlth. 2006), *abrogated in part on other ground by In re Stevenson*, 40 A.3d 1212 (Pa. 2012). *See also Aukamp v. Diehm*, 8 A.2d 400, 401 (Pa. 1939).

It is entirely clear that the signers at issue here are the registered voters whose signatures match those on the SURE system records viewed during the hearing. Objectors produced no evidence to establish that these signers are not qualified electors eligible to vote at the next election in November. Under the analysis in *In re Robertson*, (Cmwlth. No. 507 M.D. 2012, memorandum op. filed September 20, 2012), adopted by two of the three panel members, the 6 signature lines at issue in the present case involving a residence change within the same county are valid. As an unpublished memorandum decision, *Robertson* is not precedential, but I find it extremely persuasive in its analysis of the effect of 2002 amendments to the Voter Registration Act, 25 Pa.C.S. §§1101–3302, on the resolution of the present issue. In particular, the 2002 amendments establish that a voter who has moved within the same county is entitled to vote

PAM - 4

in one election at his old polling place, regardless of when he moved. 25 Pa. C.S. §1501(b)(2). In addition, a voter's registration cannot be cancelled simply because the voter moved without changing his registration address, and a voter cannot be removed from the registration rolls based on a move within the same county absent compliance with the specific requirements of the National Voter Registration Act of 1993, 52 U.S.C. §20507 [formerly found at 42 U.S.C. §1973gg—6(e)] (precluding removal from voter rolls absent failure to respond to notice and failure to vote in two federal elections). *See* 25 Pa.C.S. §1901(a) and (d). As the *Robertson* court recognized, the current statutory provisions treat changes of address within the same county as not impairing the voter's eligibility to vote and, thus, not impairing the voter's status as a qualified elector. *Id*. slip op. at 18-20.

*Sweeney*, slip op. at 3-5 (footnote omitted, emphasis added).[2]

In the *Sweeney* case, the qualification of seven voters was at issue. However, in many election petition challenges, including a number of those filed within this recent election cycle, the numbers have been much higher, generally ranging from 30 to 50 and, at times, up to or exceeding 100 signatures of electors on a candidate's petition.

The issue of potentially impairing a registered and eligible voter from otherwise signing a candidate's nomination petition raises a significant concern, which I respectfully submit merits resolution. I adopt and reiterate the request of Judge Leadbetter in *Sweeney* that our Supreme Court revisit its decisions in *Flaherty* and *Nader* in light of the amendments to the NVRA and the 2002 Act. *See id.*, slip op. at 5.

_____

[2] Ultimately, however, Judge Leadbetter felt constrained to strike the signatures at issue based upon our Supreme Court's prior decisions in *Flaherty* and *Nader*, as well as the court's *per curiam* order in *Lunny*.

In my opinion, the reasoning above, and that of Judge Cohn Jubelirer's dissenting opinion, ensure that an individual will not be deprived of the right to run for office and that the electorate will not be deprived of their right to elect a candidate of their choice. Since I do not believe that our Supreme Court's *per curiam* order in *Lunny* precludes this Court from adopting the rationale and legal conclusions of the *Robertson* court majority and Judge Cohn Jubelirer's dissent, I respectfully dissent.

_____
PATRICIA A. McCULLOUGH, Judge